**Morgan I. DOYNE, Appellee,**

v.

**UNION ELECTRIC COMPANY,
Appellant.**

**Nos. 91–1543, 91–2001.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1991.

Decided Jan. 15, 1992.

Rehearing and Rehearing En Banc Denied
March 3, 1992.

**448**

Thomas Hanna, St. Louis, Mo., argued
(Patricia McFall, on the brief), for appellant.

Marilyn Teitelbaum, St. Louis, Mo., argued, for appellee.

Samuel Marcosson, E.E.O.C., Washington, D.C., argued, for amicus curiae.

Before ARNOLD and FAGG, Circuit
Judges, and WOODS,* District Judge.

HENRY WOODS, District Judge.

I. FACTUAL BACKGROUND

Morgan I. Doyne ("Doyne") was hired by
the Union Electric Company ("UE") as a
general superintendent responsible for
overseeing the construction of the Callaway Nuclear Power Plant. When the facility was completed, his division—the division of plant construction—was eliminated.
He was reassigned to the nuclear division.

The nuclear division was later reorganized. When positions within a division
were to be eliminated, such as the position
held by Doyne, UE followed a practice of
either assigning the employee to another
division or allowing him to remain in the
position until retirement. All of the employees in the nuclear division were reassigned, save Doyne and a second individual,
both of whom were at or near retirement
age. Although other positions were available, Doyne was not reassigned. He was
not allowed to remain in his position until
retirement but was terminated. After his
termination, he began drawing pension benefits from the Union Electric Retirement

Plan Trust Fund ("Plan"), an entity separate from UE.

Doyne sued UE for age discrimination
pursuant to the Age Discrimination In Employment Act ("ADEA"), 29 U.S.C. § 621 et
seq., and the Missouri Human Rights Act
("HRA"), § 213.010 et seq. R.S.Mo. The
jury found for Doyne and awarded him
$177,515.00 in back pay and $273,993.00 in
front pay. The latter amount reflected a
finding by the jury that he would have
worked until age seventy. Although the
jury found that UE had not "willfully violated the ADEA," it determined that UE
had acted with "[an] evil motive or intent
... or [had been] callously indifferent to
[his] protected rights" under the HRA and
awarded him $48,492.00 in punitive damages.

The trial court subsequently reduced to
$19,610.66 the amount of front pay awarded by the jury. 755 F.Supp. 866. The trial
court advanced two reasons for this reduction. First, Doyne did not "pursue[ ] gainful employment with the vigor which the
law requires for the mitigation of damages." Second, there was "insufficient evidence to support the jury's implicit finding
that [Doyne] would have remained gainfully employed with UE until age [seventy]."
The trial court found that he would not
have worked past age sixty-five. The trial
court further reduced the back pay award
in the amount of $26,873.74 and the front
pay award in the amount of $2,873.58 by
deducting from the awards the pension
benefits Doyne had received, or would receive, from the Plan. The trial court took
the position that "[a]lthough [the] pension
payments are consideration for [Doyne's]
past employment with [UE], they are not
payable to him during a time in which he
would have been employed by [UE] and
receiving a salary." On the basis of the
foregoing, the trial court entered a judgment awarding him $151,055.26 in back pay
and $16,737.08 in front pay. Both parties
have appealed.

* The HONORABLE HENRY WOODS, United
States District Judge for the Eastern District of
Arkansas, sitting by designation.

## II. DIRECT APPEAL

### A. *Sufficiency of the Evidence*

 Union Electric raises a number of points for reversal. At the heart of several of these points is a challenge to the sufficiency of the evidence to support the jury's findings on Doyne's two claims.

We agree with the magistrate judge, who overruled UE's motion for judgment *non obstante veredicto*, that there was sufficient evidence to support the jury's finding of age discrimination. (Jt.App. 15A) We must: 1) consider the evidence in the light most favorable to Doyne; 2) assume that all conflicts in the evidence were resolved by the jury in Doyne's favor; 3) assume Doyne proved all the facts his evidence tends to prove; 4) give Doyne the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and 5) affirm the denial of the j.n.o.v. motion if reasonable persons could differ as to the conclusions to be drawn from the evidence. *See Frieze v. Boatmen's Bank of Belton,* 950 F.2d 538, 539 (8th Cir.1991); *Gilkerson v. Toastmaster, Inc.,* 770 F.2d 133, 136 (8th Cir.1985).

We have carefully examined the record and are convinced that the evidence of age discrimination meets the tests described above and was sufficient to support the findings made by the jury.

Without engaging in a long summary of the voluminous record in this case, we conclude that there was evidence from which the jury could have found *inter alia:* 1) in reorganizing its nuclear division, UE was motivated by a desire to cut costs by reducing wages; 2) in conformity with the policy, Doyne's job duties were assigned to younger, lower-paid employees; 3) alternative jobs were found for other employees where jobs were eliminated except for two retirement-age employees, one of whom was Doyne; 4) none of the other employees were at or near retirement age and all earned less than Doyne; and 5) the only alternative given to Doyne was retirement.

### B. *The Punitive Damage Issue*

 Union Electric's only objection to the court's punitive damage instruction follows:

I object because this fails to set forth the standard of malice required under Missouri law under Chapter 213. I would refer the Court to the case of *Western Fireproofing Company vs. W.R. Grace and Company,* [896 F.2d 286] an 8th Circuit decision # 88–2396 decided February 7th, 1990.

(Tr. 1409).

The court then read *Western Fireproofing Co. v. W.R. Grace and Company,* 896 F.2d 286 (8th Cir.1990) and quoted from this decision:

> [T]he 8th Circuit says that the Missouri Court held that "MAI 16.001 did not accurately portray controlling principles of Missouri law because it failed to explain to lay persons that a bad motive or reckless disregard of the rights of others is required to justify an award of punitive damages"....

(Tr. 1410).

The court noted that its instruction No. 16 on punitive damages mentioned "evil motive or intent and callous indifference to plaintiff's protected rights." (Tr. 1410). The trial court felt that its instruction comported with Missouri law as interpreted by this court. There was no response to the court's comments. We are inclined to agree with the magistrate judge that instruction No. 16 generally followed Missouri law. However, we do not need to decide its propriety because the text of the objection did not contain the specificity necessary to preserve the objection on appeal.

 Indeed, on appeal Union Electric makes two entirely new attacks on the instruction: 1) it omitted the requirement of "outrageous" conduct on the part of the defense; and 2) the instruction was unsupported by evidence. Neither objection to the instruction was raised in the trial court and was therefore waived on appeal. Rule 51 Fed.R.Civ.P.; *Barton v. Columbia Mutual Casualty Ins. Co.,* 930 F.2d 1337 (8th Cir.1991); *Grant v. Farnsworth,* 869 F.2d 1149, 1150 (8th Cir.1989), *cert. denied* 493 U.S. 898, 110 S.Ct. 252, 107 L.Ed.2d 202 (1989). "The purpose of Rule 51 'is to

compel litigants to afford the trial court an opportunity to cure a defective instruction and to prevent litigants from ensuring a new trial in the event of an adverse verdict by covertly relying on the error.' " *Barton v. Columbia Mutual Casualty Ins. Co., supra* at 1341.

■ Union Electric also attacks the punitive damage award on the ground that the answer to the punitive damage interrogatory under § 213.010 R.S.Mo. is inconsistent with its finding that defendant was not guilty of willful conduct under the ADEA.

The record does not indicate that UE ever presented this objection to the trial judge. After the jury returned its answers to the interrogatories, an objection should have been made before judgment was entered to permit a ruling by the trial judge. Failure to make such an objection at the trial level waives appellate review. However, we note that these answers are not necessarily inconsistent. Different statutes are involved. The authoritative decisions interpreting the federal statutes are found in the federal courts. The magistrate judge without objection to this paragraph[1] instructed that to find defendant's action "willful" the jury must determine "that when the defendant determined to terminate plaintiff, it knew or showed reckless disregard for whether its termination of plaintiff violated the federal Age Discrimination in Employment Act." (Jt.App. 27A). The standards established by the Missouri Supreme Court for finding punitive damages under the Missouri Human Rights Act, Mo.Rev.Stat. § 213.010 et seq., are entirely different, as is apparent from the text of the court's instruction No. 16 discussed above. Under these two entirely different instructions, the jury could have arrived at different conclusions.

## C. *Evidentiary Rulings*

Union Electric objects to the admission of Doyne's summary exhibits (34, 35, and 36 pursuant to Rule 1006 Fed.R.Evid.). Exhibit 34 is a summary of voluminous

documents produced by UE. Exhibits 35 and 36 are summaries of statistical evidence from Exhibits 32, 33, and 34. These exhibits are reproduced in Union Electric's Addendum. The magistrate judge did not abuse his discretion in admitting these exhibits. Furthermore, admission of these exhibits did not affect the substantial rights of the defendants. *Williams v. Wal–Mart Stores, Inc.*, 922 F.2d 1357, 1360 (8th Cir.1990).

## III. THE CROSS-APPEAL

The cross-appellant Doyne, the plaintiff below, contends that the magistrate judge erroneously set aside the jury award of front pay and erroneously deducted pension payments from back pay and front pay. We agree with Doyne and reverse the magistrate judge on these two issues.

### A. *The Front Pay Issue*

■ Whether to order reinstatement of Doyne or let him seek the alternative of front pay was a matter for the court to decide. *Dickerson v. Deluxe Check Printers, Inc.*, 703 F.2d 276, 280 (8th Cir.1983). The court chose the front pay alternative and submitted this issue to the jury for its determination. Is the amount of front pay a matter for the court rather than the jury to decide? A majority of the Circuits (Third, Sixth, Seventh, and Ninth) have opted for determination by the jury. *See, Fite v. First Tennessee Production Credit Ass'n.*, 861 F.2d 884, 893 (6th Cir.1988); *Maxfield v. Sinclair Int'l.*, 766 F.2d 788, 795–96 (3rd Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1347 (9th Cir.1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988); and *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1333 n. 4 (7th Cir.1987), *cert. denied*, 485 U.S. 1007, 108 S.Ct. 1471, 99 L.Ed.2d 700 *vacated and rem. on other grounds*, 486 U.S. 1020, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988). On the other hand, the Second, Fourth, and Tenth Circuits have held that the amount of front pay is for the judge. *See, Dominic v.*

---

1. Counsel only objected to the last sentence of the instruction, "Willfulness can be shown for example by proof that at the time the decision was made the employer concealed its discriminatory motive." (Tr. 1403).

*Consolidated Edison Co.,* 822 F.2d 1249, 1257 (2d Cir.1987); *Duke v. Uniroyal, Inc.,* 928 F.2d 1413, 1424 (4th Cir.1991); and *Denison v. Swaco Geolograph Co.,* 941 F.2d 1416 (10th Cir.1991).

■ This circuit has not addressed this issue, and it is not necessary to reach it in this case because the magistrate judge elected to submit the front pay issue to the jury. Once having done so, he is bound by the jury's finding, assuming there is substantial evidence in support. *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1101 (8th Cir.1982). An examination of the transcript discloses substantial evidence to support the answer of the jury to the interrogatory finding that Doyne was entitled to front pay in the amount of $273,993.00. The basis of the jury's finding was that Doyne would have worked to age 70 instead of age 65. Doyne himself testified that he planned to work until age 70 and that he had so informed Union Electric (Tr. 376). After being terminated by Union Electric, Doyne contacted friends, business contacts, and associates about another job. He began a job search through answering newspaper and periodical ads. He sent out 150–200 job application letters. (Tr. 382). Defendant's own witness, Joe Rinke, testified that prior to Doyne's termination he told Rinke that he intended to work until age 70 (Tr. 1524).

■ The magistrate judge found that Doyne would have worked until age 65 and justified his decision to set aside the front pay award on this ground plus the failure of Doyne to mitigate the front pay damage by seeking other employment. Having submitted the front pay issue to the jury, the magistrate judge should also have submitted the mitigation issue for its determination, assuming there was supporting evidence. As a matter of fact, UE submitted a mitigation instruction, which the court refused, with the statement, "I don't know of any evidence in the record thus far about what any particular job is that he— that was available and he should have taken or could might reasonably have taken or what the salary of that job was." (Tr. 1426).

The trial court relied on *Coleman v. City of Omaha,* 714 F.2d 804, 808 (8th Cir.1983) on the mitigation issue. However, in that case the court said:

The defendant has to show that the plaintiff failed to use reasonable care and diligence and that there were jobs available which the plaintiff could have discovered and for which the plaintiff was qualified.

714 F.2d at 808. As the magistrate judge noted in refusing defendant's proffered mitigation instruction, such proof was lacking here. There is evidence in the record from which the jury could have found that Doyne would have worked until age 70. There was testimony that he made diligent efforts to find work after his termination. The court therefore erred in setting aside the jury's finding on the front pay issue.

B. *Deduction of Pension Payments*

■ The magistrate judge held that Doyne's back and front pay awards should be reduced by the amount of pension benefits he has received and will receive. The magistrate judge found that such payment in addition to his salary would constitute a windfall. We are persuaded by the arguments of Doyne and the Equal Employment Opportunity Commission, *amicus curiae,* that the pension payments are from a collateral source and should not have been deducted.

Payments by an employer to an employee are not generally regarded as from a collateral source. *Guthrie v. J.C. Penney Co.,* 803 F.2d 202 (5th Cir.1986). Here the pension payments made to Doyne were not made by his employer but by the Union Electric Retirement Plan, an entity which is separate and distinct from Union Electric Co., pursuant to the Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1001 *et seq.*

While we have not previously ruled on the deductibility of pension benefits in the context of the ADEA, we have agreed with the view that pension payments are not deductible in a similar situation. In *Clark v. Burlington Northern, Inc.,* 726 F.2d 448, 451 (8th Cir.1984), an FELA case, we stated: "We agree with the cases holding that fringe benefit programs, such as medical and hospital insurance and retirement pensions that are offered as partial com-

pensation for employment, cannot be set off against an FELA judgment."

Other circuits have considered the precise problem presented in this case. *McDowell v. Avtex Fibers,* 740 F.2d 214, 217 (3d Cir.1984) (pension payments and payments from a collateral source should not be deducted from ADEA awards), *vacated and remanded on other grounds,* 469 U.S. 1202, 105 S.Ct. 1159, 84 L.Ed.2d 312 (1985); *EEOC v. O'Grady,* 857 F.2d 383, 391 (7th Cir.1988) (refusal to deduct pension benefits affirmed as not an abuse of equitable discretion in ADEA action).

In *EEOC v. O'Grady, supra,* the court recognized that the pension benefits at issue were not deductible because they "may be viewed as *earned* by the claimants." 857 F.2d at 391 (emphasis in original). *McDowell v. Avtex Fibers, supra,* is bolstered by several other Third Circuit decisions involving analogous situations: *Gelof v. Papineau,* 829 F.2d 452, 454–55 (3d Cir. 1987); *Maxfield v. Sinclair Int'l,* 766 F.2d 788 (3d Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *Craig v. Y & Y Snacks, Inc.,* 721 F.2d 77, 84–85 (3d Cir.1983).

This case is remanded to the district court for entry of a judgment in accordance with our opinion herein.