William J. MARSH, Plaintiff,

v.

COLEMAN COMPANY,
INC., Defendant.

Civ. A. No. 90–1030–B.

United States District Court,
D. Kansas.

Nov. 13, 1992.

Diane S. Worth, Dennis M. Feeney, Ken M. Peterson, Morris, Laing, Evans, Brock & Kennedy, Chtd., Daniel T. Brooks, Wichita, Kan., for William J. Marsh.

Gloria G. Flentje, Mikel L. Stout, Foulston & Siefkin, Wichita, Kan., for Coleman Co., Inc.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter comes before the court upon the motion of defendant for judgment as a matter of law or alternatively for a new trial. (Doc. 128). The court has previously discussed the factual circumstances of this case. 774 F.Supp. 608 (per Crow, J.). The matter was tried, and a jury found that defendant had discriminated against plaintiff in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*

## I. JUDGMENT AS A MATTER OF LAW

Defendant contends that the record does not support the jury's finding of unlawful age discrimination. Defendant also challenges the jury's award of backpay and benefits, and the court's award of front pay.

■ Rule 50 of the Federal Rules of Civil Procedure provides that the court may enter judgment as a matter of law against a party who has been fully heard on a dispositive issue if "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue,...." The court must determine whether there is evidence from which a jury could find in favor of the party who has obtained a favorable verdict, *Cleveland v. Piper Aircraft Corp.*, 890 F.2d 1540, 1553 (10th Cir.1989), and may grant the motion "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." *O.E.R., Inc. v. Hickerson*, 880 F.2d 1178, 1180 (10th Cir.1989). The court may not weigh the evidence or make credibility determinations, but must view the evidence most favorably to the non-moving party, giving that party the benefit of all reasonable inferences. *Hurd v. American Hoist & Derrick Co.*, 734 F.2d 495, 498–99 (10th Cir.1984).

### A. *Liability*

■ The court finds no basis for disturbing the jury's finding of unlawful age discrimination. Although there was no direct evidence of age discrimination, the absence of direct evidence is neither surprising nor fatal to plaintiff's claim under the ADEA. *See Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1420 (10th Cir.1991) ("there is rarely direct evidence that the employer's motive was discriminatory"). As defendant recognizes,

> [t]he plaintiff is not required to come forward with direct evidence of discriminatory intent. He is only required to show "that the employer's proffered justification is unworthy of credence." If the plaintiff establishes that the cited

reasons for his termination were pretextual, the factfinder can infer that discrimination took place.

*Merrick v. Northern Natural Gas Co.*, 911 F.2d 426, 429 (10th Cir.1990) (citations omitted).

■ The evidence showed that plaintiff was laid off during a reduction-in-force; that he had superior qualifications for positions that remained at the time of the reduction-in-force, or that became available in the months following; and that he was treated less favorably than younger persons in allocating such positions. There was also evidence indicating that the Coleman Company, under the direction of Sheldon Coleman Jr., aspired toward a younger image. Considering all the evidence in a light most favorable to plaintiff, the jury could reasonably find that defendant's stated reasons were pretextual, thus allowing the jury to infer unlawful age discrimination as the true reason for defendant's actions. This is particularly so because, in the court's opinion, defendant's principal witnesses, Joe Nold and Sheldon Coleman, Jr., were not believable. It would be entirely reasonable for the jury, following the court's instructions regarding credibility of witnesses, to have rejected all or substantial portions of the testimony of either or both of these witnesses.

### B. *Damages*

Defendant moves for judgment as a matter of law on three aspects of the damage award, both as to the backpay awarded by the jury, and as to the front pay awarded by the court.

■ The jury is afforded wide latitude and discretion in determining the amount of compensatory damages. *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1558–59 (10th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992). Also, the scope of prospective relief under the ADEA is subject to the court's equitable discretion. *Sandlin v. Corporate Interiors Inc.*, 972 F.2d 1212, 1214 (10th Cir.1992).

### 1. Mitigation of Damages

First, defendant contends that plaintiff failed to mitigate his damages, and that plaintiff is therefore precluded from any award of back or front pay. The court addressed and rejected these arguments in its Order of Aug. 17, 1992 (Doc. 126), and finds nothing to alter its previous analysis and conclusion.

### 2. Prejudgment Interest

■ Second, defendant challenges the calculation of prejudgment interest on the backpay award. In its previous order, the court awarded prejudgment interest in the amount of $42,984.00. This figure was based upon the amount of lost backpay calculated at the 10% per annum rate for money due from employers to their monthly employees. *See* K.S.A. § 16–201 (1988). Defendant notes that plaintiff has received monthly pension benefits since his termination. According to defendant, plaintiff would not have received these early pension benefits but for his termination. Thus, defendant argues, the amount of pension benefits received should offset the amount of backpay, and accordingly, the amount of prejudgment interest calculated on this backpay.

Defendant concedes that plaintiff, in calculating the lost pension benefits, has already given defendant credit for the monies received in pension benefits. Because plaintiff has used his pension benefits received to set off the award of lost pension benefits, defendant does not persist in its argument for a duplicative setoff from the backpay in the amount of pension benefits received. Defendant does insist, however, that the amount of pension benefits received should set off the award of backpay for the purpose of calculating prejudgment interest on such backpay.

■ The court disagrees. Generally, monies received from sources other than the employer are considered collateral benefits that may not be used to offset an award of backpay. *See EEOC v. Sandia Corp.*, 639 F.2d 600, 626 (10th Cir.1980) (earned vacation time does not offset backpay, although severance pay by employer does). Thus, in *Higgins v. State of Okla-*

*homa*, 642 F.2d 1199, 1203 (10th Cir.1981), the court applied this rule to prevent the employer from deducting from plaintiff's backpay award "the money [plaintiff] withdrew on termination from the pension plan." *See also Doyne v. Union Elec. Co.*, 953 F.2d 447, 451–52 (8th Cir.1992) (pension benefits not deductible from ADEA award).

Plaintiff has received the pension benefits from a collateral source: a plan to which *plaintiff* made contributions during his lengthy employment with defendant. Defendant serves merely as a conduit in disbursing these pension payments that plaintiff has earned and was entitled to receive upon vesting. The termination of plaintiff has only altered the timing of the payment of earned and vested benefits. To allow defendant to deduct these earned benefits from the backpay amount before calculating prejudgment interest would bestow a "windfall" upon defendant rather than plaintiff. *See Sandia*, 639 F.2d at 626 ("The deduction or offsetting of unemployment benefits may well result in a windfall to the employer.").

### 3. Wage Increases

■ The final challenge to the damage award is in the amount of front and back pay awarded based upon future increases in wages. Defendant argues that plaintiff would not have received any wage increase after 1989 because wages have been frozen by defendant's successor, Evcon Industries.

Defendant's evidence is not uncontroverted, for not all former employees of the Coleman Company became employees of Evcon. Although no one can know with certainty whether plaintiff—in the absence of defendant's illegal discrimination— would have been among those employees to transfer to Evcon, the court is of the view that defendant should " ' "bear the risk of the uncertainty which [its] own wrong has created." ' " *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1548 (10th Cir. 1987).

The court finds nothing to disturb the damage award made by the jury and the court.

## II. NEW TRIAL

Defendant raises several matters in support of its alternative motion for a new trial.

■■■ "A motion for a new trial is not regarded with favor and should only be granted with great caution." *United States v. Thornbrugh*, 962 F.2d 1438, 1443 (10th Cir.1992). The decision of whether to grant such a motion is committed to the sound discretion of the trial court. *E.g., McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984); *Royal College Shop, Inc. v. Northern Ins. Co.*, 895 F.2d 670, 677 (10th Cir.1990).

### 1. Erroneous Rulings

A new trial based upon an error of law is unwarranted unless that error affected the substantial rights of the parties. Fed. R.Civ.P. 61; *Heyen v. United States*, 731 F.Supp. 1488, 1489 (D.Kan.1990), *aff'd*, 945 F.2d 359 (10th Cir.1991). Thus, the movant "must demonstrate trial errors which constitute prejudicial error," *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir.1983), and the court "ignore[s] errors that do not affect the essential fairness of the trial." *Greenwood*, 464 U.S. at 553, 104 S.Ct. at 848.

### a. Evidentiary Rulings

■■■ The admission or exclusion of evidence lies within the sound discretion of the trial court. *E.g., Mason*, 948 F.2d at 1555. Defendant cites many instances of alleged evidentiary errors. The court has again reviewed defendant's challenges to certain testimony and exhibits. The court adopts the arguments of plaintiff as set forth on pp. 40–53 of his memorandum (Doc. 132) and finds these objections to be without merit.

### b. Instructions

Defendant also challenges the court's failure to give certain requested instructions.

■■■ Whether to submit a particular jury instruction is committed to the discretion of the trial court. *Harris Market Research v. Marshall Mktg. & Communications, Inc.*, 948 F.2d 1518, 1528 (10th Cir. 1991). If the court's instruction "as a whole adequately states the law, the refusal to give a particular requested instruction is not an abuse of discretion." *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 473 (10th Cir.1990).

■■■ The first two instructions relate to the court's dismissal at trial of plaintiff's breach of implied contract claim.[1] At the close of the evidence, the court ruled that plaintiff's claim for breach of an implied modified contract failed as a matter of law because plaintiff had not presented any evidence of independent consideration to support the alleged modification of a written contract. *See Augusta Med. Complex, Inc. v. Blue Cross of Kansas, Inc.*, 227 Kan. 469, 474, 608 P.2d 890, 894 (1980); *see also State ex rel. Ludwick v. Bryant*, 237 Kan. 47, 697 P.2d 858, syl. ¶ 4 (1985)(mere forbearance without mutual agreement is not legal consideration). Defendant requested that the jury be informed that plaintiff could be terminated any time, without cause, if such termination was not unlawful. (Defendant's Proposed Instruction No. 14). Defendant further requested an instruction that the court had determined, as a matter of law, that plaintiff could not reasonably have relied on any alleged statement that plaintiff "could remain at Coleman as long as there was a Coleman Company...." (Defendant's Proposed Instruction No. 40).

The court finds no error in refusing the submitted instructions. All of plaintiff's claims for breach of an employment contract were eliminated before submission of the case to the jury. The only claim submitted to the jury was plaintiff's claim under the ADEA, (Instruction No. 6), and the court made clear to the jury that the only issue for their determination was

---

1. The court had previously denied defendant's motion for summary judgment on this claim.

*See* 774 F.Supp. at 616.

whether defendant had violated the ADEA by terminating plaintiff. (Instruction No. 10). Moreover, the verdict form only asked whether "the defendant violated the Age Discrimination in Employment Act," and whether this violation had been "willful." Thus, even if the jury had somehow desired to address plaintiff's contractual claims, the verdict form provided them no avenue to express this view. Finally, the court notes that defendant's proposed Instruction No. 40 is a misstatement of the court's ruling. The court dismissed the contract claim for lack of independent consideration, not because it found that plaintiff could not have relied on the statement.

■ Defendant also finds error in the court's refusal to instruct the jury that defendant was not required to transfer or rehire plaintiff. (Defendant's Proposed Instructions Nos. 38 & 39). Defendant alleges that plaintiff made no claim of failure to transfer and rehire, and that the jury "could readily conclude that the failure to transfer or later rehire the plaintiff were evidence of age discrimination...." (Defendant's Memo. in Support, Doc. 131, at 50).

The court finds that it would be entirely appropriate for the jury to consider defendant's failure to transfer or rehire as evidence of age discrimination. That plaintiff made no "claim" of failure to rehire or transfer does not exclude this evidence for the purpose of establishing circumstantially defendant's motive and intent in terminating plaintiff. *See* Fed.R.Evid. 404(b); *Montana v. First Fed. Savings & Loan of Rochester*, 869 F.2d 100, 105 (2d Cir.1989); *Oxman v. WLS-TV*, 846 F.2d 448, 456 (7th Cir.1988). Defendant's proposed instructions would have misled the jury to believe that it could not consider this evidence, which is probative of the issue before it: whether defendant discriminated against plaintiff when it terminated him. Accordingly, the court finds no error in refusing to submit defendant's instructions.

### 2. Juror Misconduct

■ Finally, defendant urges a new trial on the ground that the foreman of the jury, Mr. Saffell, failed to reveal his previous "dealings" with other attorneys in the law firm representing defendant herein. Defendant contends that if the juror had disclosed such information, he would have been removed for cause.

During its initial voir dire of the jury panel, the court inquired whether any member of the panel knew any of the attorneys or parties who were present in the courtroom. The court did not identify counsels' respective law firms. After conducting its voir dire, the court allowed inquiry by Mr. Peterson, counsel for plaintiff; and by Mr. Stout, counsel for defendant. Mr. Peterson inquired:

> Have any of you done business with Mr. Stout's law firm, which is Foulston, Siefkin, Powers & Eberhardt; or with my firm which is Morris, Laing, Evans, Brock & Kennedy? Any one of you had business dealings with either of our firms?

Mr. Saffell was not sitting in the jury box at this time, but was sitting in the court gallery. When Mr. Saffell was called to the box, Mr. Saffell revealed to the court that he had never served as a juror, but that he had been involved in a lawsuit in 1988. Mr. Saffell stated that he and his wife had been involved in an automobile accident, and that the ensuing legal action "was kind of a messy lawsuit." Upon further inquiry by Mr. Stout, the juror stated:

> MR. SAFFELL: Well, in our particular lawsuit my wife suffered some—a hip injury that will give her problems the rest of her life and we had to sue to collect any damages, and the driver didn't have adequate insurance so we had a lawsuit against another company. So since it drug out for so long I had some anger towards—I don't know if the system is correct but towards the other parties in particular about their wanting to drag it out for such a long time and put it off and put it off when he was rightly at fault. And that stuck with me for a while.
>
> MR. STOUT: I can see that. I don't think either side will be suggesting that occurred here. Do you feel that—I don't think—I know you understand what I

mean. Is there some additional burden that I'm going to encounter as an attorney for the defendant in this lawsuit as a result of the unfortunate experience that you had in the dragging out and long time disposing of and having to bring a lawsuit in your situation?

MR. SAFFELL: Well, if I was to tell you that it wouldn't cross my mind and I wouldn't think about it I'd be lying to you. But I would like to tell you that I'm intelligent enough to try to base the decision on the facts and not on previous experiences.

MR. STOUT: All right. That's all we're entitled to.

Defendant has now discovered that other attorneys from the firm of Foulston, Siefken represented the defendant against whom Mr. Saffell and his wife filed suit in their personal injury action. Because Mr. Saffell did not reveal this fact, defendant contends that a new trial is required.

In *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), the Court set forth a two-pronged test to govern motions for a new trial based upon a juror's response during voir dire:

> [T]o obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause.

*Id.* at 556, 104 S.Ct. at 850.

The court finds that defendant has satisfied neither of these burdens. First, the question that Mr. Saffell allegedly "failed to answer honestly" was whether any member of the panel had "done business with" or "had business dealings with" defendant's law firm. It would be entirely natural for a juror to interpret this question to refer to *representation* that a juror might have received from defendant's law firm. Indeed, this is how the court interprets the question. Litigants do not describe themselves as "doing business" with their opponent's law firm.

It is at least equally plausible that the juror paid no particular heed to, or did not recognize, the name of the *law firm* of the individual lawyers who represented the defendant in the juror's personal injury action or to the *law firm* of the lawyers in this case. Furthermore, it makes little sense to assume that the juror attached significance to the name of defendant's law firm when experienced counsel for defendant did not deem it significant to ask the identity of the attorneys involved in the juror's case. Finally, Mr. Saffell's candid responses in disclosing and discussing his lawsuit undermine any claim of a "dishonest" response to a question directed by plaintiff's counsel to a group of potential jurors of which Mr. Saffell was not a member.

The court also finds that disclosure of such information would not furnish cause for excusing Mr. Saffell. "The challenge for cause is narrowly confined to instances in which threats to impartiality are admitted or presumed from the relationships, pecuniary interests, or clear biases of a prospective juror." *Darbin v. Nourse,* 664 F.2d 1109, 1113 (9th Cir.1981). "A court must grant a challenge for cause if, by express admission or proof of specific facts, actual prejudice or bias is shown." *United States v. Bedonie,* 913 F.2d 782, 795 (10th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2895, 115 L.Ed.2d 1059 (1991).

The facts do not warrant the conclusion that Mr. Saffell was actually prejudiced against defendant simply because of a previous encounter between the juror and other attorneys at the 70–some–member law firm representing defendant.[2] The court finds that Mr. Saffell was both honest and forthright in admitting the unpleasant experience of his lawsuit, and further in disclosing the potential for this experience to "cross his mind." This notwithstanding, the juror also believed that he "was intelligent enough" to render an impartial ver-

---

2. Another member of the panel, Ms. Wettig, disclosed that she was a "good friend" of the daughter of Mr. Stout. The court dismissed Ms. Wettig, however, only after ascertaining that she felt unable to fulfill her obligations as a juror.

**1512**

dict—an explanation that satisfied defendant.

The court finds no basis for a new trial on the grounds of juror misconduct.

## III. CONCLUSION

This case was well-tried by highly competent counsel to an intelligent, conscientious jury. Virtually all the evidence offered by both sides was admitted. While there were certain elements of emotion in the case (as in almost any case) the court emphatically rejects defendant's argument that the jury's verdict was the result of emotional appeals. On the contrary, this was a classic case of major disputes regarding the credibility of witnesses and the weight of conflicting evidence. The jury's resolution of these disputes in favor of the plaintiff was entirely reasonable.

Accordingly, the court denies defendant's motion (Doc. 128) for judgment as a matter of law or a new trial.

IT IS SO ORDERED.