United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

Nos. 96-1456/1535

_____

Richard Newhouse,                    *
                                     *
        Cross-Appellant/Appellee,    *   Appeal from the United States
                                     *   District Court for the
        v.                           *   District of Nebraska.
                                     *
McCormick & Co., Inc.,               *
                                     *
        Appellant/Cross-Appellee.    *


_____

Submitted:  November 19, 1996

Filed:  April 14, 1997
_____

Before FAGG and HANSEN, Circuit Judges, and MAGNUSON,[1] District    Judge.
_____


HANSEN, Circuit Judge.

        Richard Newhouse brought this suit against McCormick & Co., Inc.,
alleging age discrimination in violation of the Age Discrimination in
Employment Act (ADEA), 29 U.S.C. §§ 621-634 (1994), and in violation of the
Nebraska Act Prohibiting Unjust Discrimination in Employment Because of
Age, Neb. Rev. Stat. §§ 48-1001 through 48-1010 (Reissue 1993).  A jury
decided the ADEA claim in favor of Newhouse, and the district court decided
the claim under the Nebraska Act, also concluding that McCormick

_____

        [1]The Honorable Paul A. Magnuson, Chief Judge, United States
District Court for the District of Minnesota, sitting by
designation.

intentionally discriminated against Newhouse on account of his age. McCormick appeals on several grounds, and Newhouse cross-appeals the district court's refusal to provide him with an enhanced attorney fee award.  We affirm in part and reverse in part.

## I.  Background

We recite the facts in the light most favorable to the jury verdict and the district court's findings.  See Parrish v. Immanuel Medical Ctr., 92 F.3d 727, 731 (8th Cir. 1996).  On February 1, 1993, Richard Newhouse, then 61 years old, interviewed with McCormick & Co., Inc., for a position as a sales representative for McCormick's product line of Schilling spices, a job he had held in the past.  Despite Newhouse's excellent credentials and spice sales experience, McCormick gave the job to a less-experienced 37-year- old man.

Newhouse had previously worked as a successful sales representative for McCormick, selling its line of Schilling spices for approximately 23 years.  In 1987, McCormick terminated Newhouse's employment when it eliminated its direct sales force, electing instead to use a food broker to sell Schilling spices.  Newhouse then obtained a job with the food broker, marketing McCormick products for the broker as he had done as a McCormick employee.  The sales representatives whom McCormick terminated understood from representations of McCormick's vice president, Mr. Harris, that if McCormick decided to use a direct sales force again, they would be given first priority in the rehiring process.

Newhouse continued working for the food broker through 1992.  While working in this capacity, Newhouse dealt with several grocery stores that purchased through a grocery wholesaler named Affiliated

Foods.  In late 1992, Affiliated Foods agreed to carry McCormick spices, but it required McCormick to deal with Affiliated through a direct sales force rather than a food broker.  Thus, McCormick once again needed a direct sales force in Nebraska.  McCormick created four sales positions.

The food broker for which Newhouse was working eliminated his position in January 1993.  Newhouse had heard about an opening with McCormick and was very interested in returning to McCormick as a sales representative.  Newhouse contacted Dale DeWit, the zone manager at McCormick who was in charge of hiring the new sales force, and expressed his interest in obtaining one of the sales positions.  DeWit initially told Newhouse to contact him later because they were not yet ready to begin the hiring process.  Newhouse called DeWit several times after that, and finally, DeWit agreed to interview him.

On January 15, 1993, DeWit interviewed Michael Soflin, a 37-year-old man with grocery and food sales experience.  On February 1, 1993, DeWit interviewed Newhouse.  Newhouse had sold McCormick's Schilling spices very successfully for approximately 29 years.  He had received the C. P. McCormick award, which is the company's top sales award.  Newhouse had routinely ranked among the top sales representatives for his zone and possessed a thorough knowledge of Schilling spices.  DeWit assured Newhouse that he would not be making a hiring decision for some time.  He did not tell Newhouse that he had obtained approval on January 29, 1993, to hire Soflin,  two days prior to Newhouse's scheduled interview.  Furthermore, DeWit hired Michael Soflin for the sales position the day after Newhouse's interview.

Of the four available positions, one was filled by a current McCormick employee, and DeWit interviewed applicants for the

3

remaining openings. The applicants did not apply for positions at certain locations. DeWit decided which location to consider each applicant for, and once compartmentalized as he saw fit, he did not consider them for the other available locations. In each instance, DeWit passed over the oldest applicants for the position, regardless of qualifications. When one 59-year-old applicant inquired about the salary, DeWit responded, "normally, I hire younger people and start them out at $17,000 a year." (Trial Tr. at 542.) That applicant was not offered a job. DeWit also rejected another older applicant, who had 30 years of experience selling Schilling spices, as overqualified. Yet, DeWit initially told Newhouse that he was not qualified for the position (though Newhouse had 29 years of sales experience with McCormick spices).

McCormick offered various and changing reasons for not hiring Newhouse. DeWit initially told Newhouse that he was not qualified, while McCormick conceded at trial that Newhouse was qualified for the position, and the record amply supports the fact. Later, McCormick sent a letter explaining that Newhouse was not hired because Soflin had direct experience with its new customer, Affiliated Foods, yet DeWit rejected a 59-year-old applicant who was better known to Affiliated Foods than Soflin. In his affidavit, DeWit said that Soflin was hired not so much for his experience with Affiliated as for his ideas about expanding the business, while Soflin testified at trial that during his interview he did not present any ideas for expanding the business. DeWit also said that Soflin performed better in the interview than Newhouse, but he used no objective scoring or ranking devices, so no evidence was presented to corroborate this statement.

After learning that McCormick did not offer him a position, Newhouse sought other full-time employment. He applied with various food brokerage companies and sought help through the

Nebraska job service, but his search proved unsuccessful in securing full-time employment. Newhouse did not want to retire, but because he was only able to obtain part-time work, he applied for and began receiving social security retirement benefits beginning in August 1994. He would not have retired at that time had he been employed full-time by McCormick.

On April 19, 1994, Newhouse filed this suit alleging age discrimination in violation of the ADEA, 29 U.S.C. §§ 621-634, and in violation of the Nebraska Act Prohibiting Unjust Discrimination in Employment Because of Age, Neb. Rev. Stat. §§ 48-1001 through 48-1010. He requested and received a jury trial on the ADEA claim, and the Nebraska claim was tried to the court. The jury found in favor of Newhouse and awarded him $59,426.76 in back pay and $206,359 in front pay from the date of the verdict until the date Newhouse normally would have retired. The jury also found that McCormick's conduct was willful, and based on this finding, the district court awarded an additional $59,426.76 in liquidated damages. The district court also awarded Newhouse attorney fees in the amount of $31,240.02, plus costs and interest on the judgment but denied Newhouse's request for enhanced attorney fees and prejudgment interest.

On the Nebraska claim, the district court issued findings of fact and concluded that McCormick had intentionally discriminated against Newhouse on the basis of his age. The district court awarded back pay in the amount of $59,426.76, front pay in the amount of $84,062, attorney fees in the amount of $31,240.02, plus costs and interest on the judgment. The judgment provided that Newhouse was entitled only to the greater of the cumulative awards under either the ADEA claim or the state law claim, but not to both.

Following the entry of the judgment, McCormick filed motions for judgment as a matter of law, for a new trial, or alternatively, to alter or amend the judgment in this case. The district court denied the post-trial motions, except to conclude that it would grant a new trial as to damages unless Newhouse agreed to a remittitur of the jury's front pay award on the ADEA claim within ten days of the court's order. Newhouse timely consented to reducing the jury's front pay award to $158,365.96, and the district court denied McCormick's motion for a new trial.

McCormick appeals, arguing that the district court erred in the ADEA claim by submitting the issue of front pay to the jury and by denying its motions for judgment as a matter of law, for a new trial, and to alter or amend the judgment. McCormick also argues that the district court erred in its findings of fact, conclusions of law, and order of relief in the Nebraska state claim. Newhouse cross appeals the district court's refusal to grant him enhanced attorney fees.

## II. Discussion
### A. Judgment as a Matter of Law

McCormick moved for judgment as a matter of law at the close of Newhouse's evidence, at the close of its own case, and at the end of the case. In each instance, the district court denied the motion. "It is well settled that we will not reverse a jury's verdict for insufficient evidence unless, after viewing the evidence in the light most favorable to the verdict, we conclude that no reasonable juror could have returned a verdict for the non-moving party." Ryther v. KARE 11, No. 94-3622, slip op. at 5 (8th Cir. Mar. 6, 1997) (en banc).

6

Our standard for reviewing the sufficiency of proof in an age discrimination case tried to verdict by a jury is set forth in Ryther. See id., slip op. at 5-10, 33-35. The fundamental issue is "whether [the plaintiff] produced sufficient evidence to allow a jury reasonably to find that [the employer] intentionally discriminated against him on the basis of his age." Id., slip op. at 10-11. McCormick contends that Newhouse failed to establish that its articulated reasons for not hiring him were a pretext for discrimination. While McCormick offered several nondiscriminatory reasons for not hiring Newhouse, our review of the evidence reveals sufficient evidence presented by Newhouse from which a reasonable jury could conclude that those reasons were not credible and were in fact a pretext for age discrimination.

DeWit initially said that Newhouse was not qualified, but there is no question that he was qualified for the job, and McCormick even admitted this at trial. A letter from McCormick dated May 12, 1993, states that Soflin was hired instead of Newhouse because of Soflin's experience with Affiliated Foods, a new customer. In an affidavit, DeWit stated that Soflin's relationship with Affiliated Foods was not the primary reason he selected Soflin; instead it was Soflin's "concepts for expanding McCormick's position in the spice industry." (Appellant's App. at 161.) At trial, however, Soflin testified that he did not present any ideas for improving the spice business during the interview but presented his ideas after their first spring food show, about four months after he had been hired. Additionally, though McCormick advanced Soflin's experience with Affiliated Foods as an important factor, DeWit bypassed another older applicant who had a stronger relationship with Affiliated Foods than Soflin. DeWit cited Soflin's enthusiasm and desire to work for McCormick as important, yet the record also reveals great enthusiasm and desire on the part of Newhouse, who had much more sales experience with the product

and had a great deal of success while working for McCormick in the past. Because McCormick's "nondiscriminatory reasons" for not hiring Newhouse were various and always changing, McCormick's motive becomes suspect. <u>See St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.") Viewing this together with the other evidence in the record demonstrating that DeWit consistently hired younger applicants instead of the older ones, even when the older applicants were much better qualified for the position (including his own statement that he normally hires younger people), a reasonable jury could conclude that the real reason Newhouse was not hired was his age. Having carefully considered the entire record in this case, we conclude that the evidence was sufficient for a reasonable jury to conclude that McCormick intentionally discriminated against Newhouse on the basis of his age.

McCormick argues that there was insufficient evidence from which a jury could conclude that it willfully violated the ADEA. "Under § 7(b) of the ADEA, 29 U.S.C. § 626(b), a `willful' violation gives rise to liquidated damages." <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 606 (1993). Liquidated damages amount to a punitive double recovery, "intended to deter willful conduct." <u>Wiehoff v. GTE Directories Corp.</u>, 61 F.3d 588, 593 (8th Cir. 1995). An ADEA violation is "`willful' if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." <u>Hazen Paper Co.</u>, 507 U.S. at 614 (quoting <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 126 (1985)). In determining whether a violation is willful, "[t]he question is not whether the evidence used to establish willfulness is different from and additional to the evidence used to establish a violation

of the ADEA, but whether the evidence -- additional or otherwise -- satisfies the distinct standard used for establishing willfulness." Brown v. Stites Concrete, Inc., 994 F.2d 553, 560 (8th Cir. 1993) (en banc).

Considering the evidence in the light most favorable to Newhouse and giving him the benefit of all favorable inferences, Parrish, 92 F.3d at 736, the evidence shows that DeWit knew of the ADEA, yet he disregarded it and rejected Newhouse on the basis of his age.  Age was not a "bona fide occupational qualification" in this case, Hazen Paper Co., 507 U.S. at 616, and the decision not to hire Newhouse was not "based on reasonable factors other than age."  29 U.S.C. § 623(f)(1) (1994).  A reasonable jury could have concluded that DeWit only agreed to interview Newhouse to give the appearance that he was complying with the ADEA, though he had already decided to hire Soflin.  This is not a case where the person making the hiring decision incorrectly but in good faith believed that the statute permitted an age-based decision.  See Hazen Paper Co., 507 U.S. at 616. The jury's determination that McCormick willfully violated the ADEA is supported by the record.

McCormick also contends that Newhouse's failure to mitigate his damages by not actively seeking full-time employment after he began receiving social security benefits should reduce the back pay award and cut off his right to front pay as a matter of law.  A successful ADEA plaintiff must show that he or she attempted to mitigate damages or face a reduction in the damage award.  Parrish, 92 F.3d at 735.  This duty to mitigate requires a plaintiff to use reasonable diligence in finding other suitable employment and not to refuse a job that is substantially equivalent to the one at issue.  Id. (citing Ford Motor Co. v. EEOC, 458 U.S. 219, 231-32 (1982)).  Our review of the record convinces us that Newhouse did use reasonable diligence in seeking suitable full-time employment.

9

He applied to various food brokerage companies looking for comparable work and sought the help of the Nebraska job service.  He accepted the only job offered to him, which happened to be part-time work.  Later, he attempted to supplement this income with social security retirement benefits.  Thereafter, he applied for only one other job, but he testified that there were no openings available in his field.  Newhouse also testified that he would have given up his social security benefits had he been offered a full-time position.  The burden to mitigate damages "is not onerous and does not requires success." Brooks v. Woodline Motor Freight, Inc., 852 F.2d 1061, 1065 (8th Cir. 1988).  "All that is required by law is an honest, good faith effort." Id.  We are satisfied that Newhouse's efforts were reasonable and that he made a good faith, albeit unsuccessful, effort to secure full-time employment.  Thus, the district court did not err in refusing to grant judgment as a matter of law on this issue.

For the same reasons as set forth above, we also conclude that the district court did not abuse its discretion by refusing to grant a new trial or to alter or amend the judgment.  The jury was free to believe Newhouse instead of DeWit on material factual issues, and the verdict is not against the great weight of the evidence.

## B.  Front Pay

McCormick argues that the district court abused its discretion by choosing front pay in lieu of reinstatement as the appropriate form of equitable relief and by submitting the issue of front pay to the jury. "Front pay is an equitable remedy, which the district court in its discretion may award under the ADEA to make the injured party whole." Smith v. World Ins. Co., 38 F.3d 1456, 1466

(8th Cir. 1994). Front pay consists of monetary damages that may be awarded in lieu of reinstatement in situations where reinstatement is "impracticable or impossible." Philipp v. ANR Freight Sys., Inc., 61 F.3d 669, 674 (8th Cir. 1995). In making a front pay award, the district court is not free to reject or contradict findings by the jury on issues that were properly submitted to the jury, but the district court "retains its discretion to consider all the circumstances in th[e] case when it determines what equitable relief may be appropriate." Gibson v. Mohawk Rubber Co., 695 F.2d 1093, 1101 (8th Cir. 1982).

McCormick first argues that the district court erred because reinstatement is the preferred remedy absent some evidence of hostility, and the tension caused by the litigation process alone does not make reinstatement impracticable or impossible in this case. See Brooks, 852 F.2d at 1065. We review only for an abuse of discretion. Philipp, 61 F.3d at 674. The district court rejected reinstatement, finding that the suit had strained the relationship between Newhouse and McCormick, and in particular, Mr. DeWit, who would have been Newhouse's zone manager. (Appellant's Addend. at 11.) The district court stated that Newhouse's testimony to the effect that he did not think he could go back to work for McCormick was "not probably inaccurate, listening to both Mr. Soflin and Mr. Newhouse." (Trial Tr. at 685-86, as amended by the district court, Appellee's App. at 4.) DeWit was the McCormick representative who reluctantly interviewed Newhouse, made the willful discriminatory decision not to hire Newhouse, and told Newhouse that he was not qualified for the job. This evidence supports the district court's conclusion that reinstatement is not appropriate. Additionally, by the time of trial, Newhouse was receiving social security retirement benefits due to his inability to secure full-time employment, rendering reinstatement impractical. See Duke v. Uniroyal, Inc., 928 F.2d 1413, 1424 (4th

11

Cir.) ("If a plaintiff is close to retirement, front pay may be the only practical approach."), cert. denied, 502 U.S. 963 (1991).  Viewing the record in this case as a whole, the district court did not abuse its discretion by ordering front pay in lieu of reinstatement.

Newhouse asked the court to submit the front pay issue to the jury, and McCormick objected, arguing that front pay is an equitable matter to be determined by the court.  The district court concluded that the issue of "whether or not the facts support a front pay award is no different in principle than many other damage questions that we present to jurors in an employment context or outside of an employment context, and for that matter, it seems to me in this case entirely appropriate to submit it to the jury . . . "  (Trial Tr. at 686.)  Thus, the district court submitted to the jury the decision of what amount of front pay should be awarded. Acknowledging some uncertainty about the proper procedure, however, the district court also made a corollary finding that, had the court determined the front pay issue for the ADEA claim, the court would have awarded front pay reduced to the present value of $84,062.

The choice between the two equitable remedies of reinstatement and front pay clearly belongs to the court.  See Doyne v. Union Elec. Co., 953 F.2d 447, 450 (8th Cir. 1992).  Once front pay is chosen, whether the district court must determine the amount or whether the court may submit that determination to the jury is still an open question in this circuit. We have stated, "Although the calculation of a front-pay award necessarily involves some uncertainty, it is a matter of equitable relief which we leave to the sound discretion of the District Court."  MacDissi v. Valmont Indus., Inc., 856 F.2d 1054, 1060 (8th Cir. 1988).  Yet we have not directly decided whether the district court's discretion includes

12

the authority to submit the determination of the amount of front pay to the jury. See Doyne, 953 F.2d at 451 (stating, "This circuit has not addressed this issue, and it is not necessary to reach it in this case . . . ."). In Doyne, we reversed a magistrate judge's decision to reduce the amount of front pay awarded by a jury, but we expressly refused to decide whether a trial court is permitted to submit the front pay issue to the jury in the first instance. Id. We now have the opportunity to address this issue squarely.

Our sister circuits have expressed differing opinions on the question of whether a jury can determine the amount of front pay. The Third, Fifth, Sixth, and Ninth Circuits have held that while the district court must initially determine whether a plaintiff is entitled to front pay in lieu of reinstatement, the jury determines the amount of front pay damages. See Hansard v. Pepsi-Cola Metro. Bottling Co., 865 F.2d 1461, 1470 (5th Cir.), cert. denied, 493 U.S. 842 (1989); Fite v. First Tennessee Prod. Credit Ass'n, 861 F.2d 884, 893 (6th Cir. 1988); Cassino v. Reichhold Chem., Inc., 817 F.2d 1338, 1347 (9th Cir. 1987), cert. denied, 484 U.S. 1047 (1988); Maxfield v. Sinclair Int'l, 766 F.2d 788, 796 (3d Cir. 1985), cert. denied, 474 U.S. 1057 (1986). These courts have adopted this view without any analysis, merely reciting the one statement of dicta from Maxfield in which the Third Circuit, without citation to any authority, stated that "the amount of damages available as front pay is a jury question." 766 F.2d at 796.

To the contrary, the Second, Fourth, Seventh, and Tenth Circuits hold that both the determination of whether front pay is appropriate and the determination of how much front pay to award are questions for the district court's equitable discretion, and thus, the issue of the amount of front pay should not be submitted

13

to the jury.  See Fortino v. Quasar Co., 950 F.2d 389, 398 (7th Cir. 1991); Denison v. Swaco Geolograph Co., 941 F.2d 1416, 1426 (10th Cir. 1991); Duke v. Uniroyal, Inc., 928 F.2d 1413, 1424 (4th Cir.), cert. denied, 502 U.S. 963 (1991); Dominic v. Consol. Edison Co. of New York, Inc., 822 F.2d 1249, 1257 (2d Cir. 1987).  We agree with this rule and find that the Second Circuit's Dominic case best enunciates the rationale.

In Dominic, the Second Circuit set forth a thorough and well-reasoned discussion, concluding that the amount of front pay must be determined by the court.  822 F.2d at 1257-58.  The court concluded that the language, structure, and history of 29 U.S.C. § 626 all indicate Congress's intention "to limit jury trials to factual issues underlying claims for legal relief."  Id. at 1257 (emphasis added).  Additionally, the court reasoned as follows:

> There is much overlap between the facts relevant to whether an award of front pay is appropriate and those relevant to the size of the award.  For example, both questions turn in part on the ease with which the employee will be able to find other employment.  To divide the fact-finding responsibilities in such circumstances would be anomalous and would risk inconsistent decisions. . . .  [For example,] a judge might find front pay appropriate, but the jury might award only a nominal sum based on its belief that the employee could secure immediate employment.

Id.

We agree with the Second Circuit's cogent analysis and now expressly hold that front pay, including the determination of how much front pay to award, is an equitable issue for the court.  The district court erred in this case by submitting the front pay determination to the jury.  Nevertheless, we need not remand on this issue because the district court made a corollary finding that

14

had it not submitted the issue to the jury, the court would have awarded Newhouse front pay reduced to the present value of $84,062 on the ADEA claim. McCormick does not challenge this factual finding. Thus, Newhouse is entitled to $84,062 in front pay, as determined by the district court.

McCormick also argues that the receipt of liquidated damages cuts off Newhouse's entitlement to front pay as a matter of law. We disagree. As previously noted, liquidated damages are punitive in nature under the ADEA. Thurston, 469 U.S. at 125. Front pay, on the other hand, is equitable relief that may be obtained in lieu of reinstatement. The jury's finding of willfulness and the resulting award of liquidated damages simply does not affect the district court's determination of appropriate equitable relief.

### C. Nebraska State Law Claim

McCormick argues that the district court erred in several respects in its findings of fact, conclusions of law, and order of relief on the state law claim. The Nebraska state courts interpret the Nebraska Act Prohibiting Unjust Discrimination in Employment Because of Age as requiring the same proof of age discrimination as we require under the ADEA. See Allen v. AT&T Technologies, Inc., 423 N.W.2d 424, 431 (Neb. 1988) (noting that "[a]gain, we follow the lead of the federal courts" in evaluating an age discrimination claim). Our review of the record indicates that the district court's findings of fact and conclusions of law are not clearly erroneous. Although differing inferences could have arisen from the evidence presented, the district court as fact finder was free to make its own findings, and those findings have support in the record.

15

Finally, McCormick contends that the district court erred by awarding attorney's fees under the state law claim. The Nebraska Act does not explicitly provide for an award of attorney's fees but gives the court jurisdiction to grant legal or equitable relief as the court may deem appropriate to effectuate the purposes of the Act. Neb. Rev. Stat. § 48-1009. We need not decide whether Nebraska law allows an award of attorney's fees in an age discrimination case, because this issue of state law is not material to the outcome of this case. The judgment of the district court provides that the plaintiff is entitled to the total of all amounts awarded under either the state law claim or the ADEA claim, whichever is greater -- but not both. The total judgment under the ADEA claim is greater than the total judgment under the state law claim, even if attorney's fees were properly included under Nebraska law, an issue we do not decide. Thus, Newhouse is entitled only to the amounts awarded under the ADEA claim.

## D. Enhanced Attorney's Fees

Newhouse claims in his cross appeal that the district court abused its discretion by not awarding him an enhanced contingency fee. Newhouse asserts that an enhanced contingency fee award is necessary due to the difficulty plaintiffs encounter when trying to obtain counsel for employment discrimination cases where the Nebraska Employment Opportunity Commission makes a finding of no cause. In support of his argument, Newhouse relies on our opinion in Morris v. American Nat'l Can Corp., 952 F.2d 200, 204 (8th Cir. 1991), rev'd, 988 F.2d 50 (1993). We reject this argument as meritless.

The Supreme Court has held that an enhancement above the lodestar fee for contingency is not permitted. City of Burlington

v. Daque, 505 U.S. 557, 567 (1992) (specifically referring to the attorney's fee provision of the Solid Waste Disposal Act, 42 U.S.C. § 6972(e)); id. at 561-62 (including within its discussion the similar language of other federal fee-shifting statutes); Hukkanen v. Int'l Union of Operating Eng'rs, 3 F.3d 281, 287 (8th Cir. 1993) (noting the Supreme Court held in Daque that "the federal fee shifting statutes do not allow enhancement of a fee award beyond the lodestar amount to reflect that a party's attorneys were retained on a contingency basis"). Our opinion in Morris, on which Newhouse relies, has been reversed by this court in response to the Supreme Court's opinion in Daque. We conclude that the holding of Daque applies with full force to the ADEA fee shifting statute, see 29 U.S.C. §§ 626(b) & 216(b), thus prohibiting a fee enhancement beyond the lodestar amount on the basis of a contingency arrangement. Therefore, the district court did not abuse its discretion by denying an enhanced contingency fee award in this case.

### III. Conclusion

We reverse the district court's decision to submit the front pay award to the jury, and remand for entry of judgment on the district court's corollary front pay finding, awarding $84,062 in front pay on the ADEA claim. In all other respects, we affirm the judgment of the district court. We grant McCormick's motion to strike a portion of Newhouse's cross-appeal reply brief for its failure to conform to Fed. R. App. P. 28(c).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

17