Francis L. PHILIPP, Appellant/Cross–Appellee,

v.

ANR FREIGHT SYSTEM, INC., Appellee/Cross–Appellant,

Nos. 93–3993, 94–1187 and 94–1191.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1995.

Decided Aug. 8, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 10, 1995.

F.3d 804, 811 n. 7 (8th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 341, 130 L.Ed.2d 298 (1994).

672

Karen K. Howard, Kansas City, MO, argued (Ann E. Robards and Gwen G. Caranchini, Kansas City, MO, on the brief), for appellant.

R. Kent Sellers, Kansas City, MO, argued (John J. Yates and Jean Paul Bradshaw, II, Kansas City, MO, on the brief), for appellee.

Before LOKEN, Circuit Judge, ROSS and JOHN R. GIBSON, Senior Circuit Judges.

ROSS, Senior Circuit Judge.

I.

This action for legal and equitable relief arises from two cases filed by Francis L. Philipp against his former employer, ANR Freight System, Inc. (ANR), under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (ADEA). On November 24, 1986, Philipp filed the initial complaint, alleging he was discriminated against because of his age when he was demoted from his position of operations manager to dock supervisor. This first case resulted in a jury verdict in favor of ANR. On appeal, this court reversed and remanded the case for trial, concluding that the district court had improperly excluded evidence of other ADEA cases against ANR. *Phillip*[1] *v. ANR Freight Sys., Inc.*, 945 F.2d 1054, 1056 (8th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 81, 121 L.Ed.2d 45 (1992) (*Philipp I* ). On March 17, 1992, while *Philipp I* was proceeding on appeal, Philipp filed a second age discrimination case against ANR arising from his May 30, 1990 discharge and the failure of ANR to rehire him (*Philipp II* ). Upon remand, *Philipp I* was consolidated

with *Philipp II* and both cases were tried to a jury. On May 7, 1993, a jury returned verdicts in favor of Philipp on his original demotion claim as well as his subsequently filed retaliatory failure to rehire claim. The jury awarded damages of $24,658.00 and $45,057.12, respectively. The jury found in ANR's favor on Philipp's discharge claims, concluding that Philipp was terminated as a part of ANR's reduction in force. Following post-trial motions, the district court awarded Philipp part of the front pay and benefits sought, permitted the submission of attorneys' fees, but denied Philipp's request for prejudgment interest.

In this appeal, Philipp challenges the district court's admission of evidence of ANR's poor financial condition to explain the reason for Philipp's discharge as part of a reduction in force. Philipp also argues the court erred in ordering reinstatement rather than front pay, failing to apply a mixed-motive analysis to his discharge claims, failing to award prejudgment interest, and reducing the amount of attorneys' fees. On cross appeal, ANR argues the district court erred in admitting evidence of other age discrimination lawsuits against ANR and erred in failing to enter judgment as a matter of law for ANR on Philipp's retaliatory refusal to rehire claim. After a careful review of the briefs, record, and arguments of the parties, we affirm the judgment of the district court.

II.

First, Philipp contends the court erred in admitting evidence of ANR's financial condition as a sufficient reason in itself to explain Philipp's discharge as part of a reduction in force. The district court allowed evidence that ANR lost nearly $15 million in the last three quarters of 1989 followed by an $11.4 million loss in the first quarter of 1990. After attempts to sell or merge ANR failed, management implemented a rapid and dramatic downsizing of the company. The number of ANR terminals nationwide went from 222 to 45. Approximately 4,000 of ANR's 6,000 employees were laid off. Terminal manager Richard Stiles was allowed to retain

---

1. We note that "Philipp" was spelled incorrectly in the original opinion.

five salaried managerial employees in addition to himself. He chose to retain Ron Howe as assistant terminal manager, the terminal secretary, and the most senior incumbent manager from the terminal's three departments: road dispatch, city dispatch and the dock. In the dock area, where Philipp was also assigned, Stiles retained Robert Willis, the most senior supervisor in the department, who had worked for ANR or its predecessors since 1958. Willis was older and had more seniority with ANR and more years in the position of dock supervisor than Philipp.

██ Philipp now argues that ANR retained younger and less experienced employees to perform the same job duties that he had been performing at the time of his termination. For example, he argues he should have been retained and transferred to supervisor of city dispatch instead of Dan Robertson who was younger and less experienced. He claims that "adverse economic conditions" resulting in a reduction of force is insufficient in itself to rebut Philipp's prima facie case, and instead that the district court should have required ANR to show why it retained younger, less experienced employees when he was terminated.

Contrary to Philipp's assertions, however, ANR showed not only that adverse economic conditions resulted in the massive reduction in force at the time of Philipp's discharge, but also that the method for choosing employees to be retained following the reduction in force was nondiscriminatory. Richard Stiles testified that he retained the most senior incumbent manager from each department in order to have a "strong," "already trained" crew. Stiles testified that he did not consider transferring Philipp to city dispatch instead of termination, even though Philipp had significant prior experience in city dispatch, because "customers were just flying away from us" and Philipp did not have the established customer relationships that ANR needed to prevent the loss of more customers. We conclude that ANR adequately articulated a legitimate, nondiscriminatory reason for Philipp's termination. The court did not err in allowing evidence of ANR's adverse financial condition.

## III.

██ Philipp next argues the court erred in failing to apply the mixed-motive analysis under *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), to his 1990 claims of discriminatory and retaliatory discharge. We disagree. Under *Price Waterhouse,* the plaintiff carries the initial burden of "showing that an illegitimate criterion was a motivating factor in the employer's decision to terminate [his] employment." *Cram v. Lamson & Sessions Co.,* 49 F.3d 466, 471 (8th Cir.1995). Once the plaintiff has made this threshold showing, the burden of persuasion then shifts to the employer to prove that it would have terminated the employee even without the illegitimate criterion. *Id.*

██ In order to merit a mixed-motive instruction and thereby shift the burden of persuasion to the employer, a plaintiff must initially present evidence, either direct or circumstantial, "showing a specific link between the discriminatory animus and the challenged decision," "sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the challenged decision." *Stacks v. Southwestern Bell Yellow Pages, Inc.,* 996 F.2d 200, 201 n. 1, 202 (8th Cir.1993). For this reason, evidence that "discriminatory attitudes were prevalent" in the workplace does not warrant a mixed-motive analysis without further evidence "that these attitudes had a causal relationship to [plaintiff's] termination or nonpromotion." *Sargent v. Paul,* 16 F.3d 946, 948 (8th Cir.1994). This requirement of a causal link between discriminatory statements and the decisional process therefore renders insufficient " 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself.' " *Beshears v. Asbill,* 930 F.2d 1348, 1354 (8th Cir.1991) (quoting *Price Waterhouse, supra,* 490 U.S. at 277, 109 S.Ct. at 1804–05).

██ Here, Philipp argues he presented evidence that required the use of a mixed-motive instruction under *Price Waterhouse.* According to Philipp, this evidence consisted

of numerous age-related statements made by Ainsworth, Baker, Emahiser and Howe, each of whom was responsible for ANR employment decisions. ANR responds, however, that three of the four alleged decisionmakers were not involved in the decision to terminate Philipp and were not even employed by ANR when the reduction in force was implemented in May 1990. Ainsworth left the Kansas City terminal in early 1986 and left ANR entirely in 1989. Baker transferred from Kansas City in 1985 and left ANR entirely prior to 1990. Emahiser departed ANR in 1989. This leaves only Howe who was the assistant terminal manager in May 1990. Therefore, Philipp's assertion that he was entitled to a mixed-motive instruction on the discharge claims rests only on evidence that Howe referred to Philipp on occasion as "the old man."

We agree with the district court that the record is devoid of evidence showing a "specific link between discriminatory animus and the challenged decision," *see Stacks, supra,* 996 F.2d at 201 n. 1, and that the comments made by Howe are properly classified as "stray remarks in the workplace." Philipp has failed to demonstrate that Howe's references to him as "the old man," or any underlying discriminatory attitude, "was more likely than not a motivating factor in [his termination]." *See Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449 (8th Cir.1993). Because Philipp failed to make the threshold showing, he is not entitled to mixed-motive treatment of his claims.

### IV.

■ Based on a verdict for Philipp on his retaliatory refusal to rehire claim, the district court ordered reinstatement. Although Philipp sought reinstatement in his complaint, he now argues the court abused its discretion by ordering reinstatement rather than front pay.

■ Under the ADEA, future damages in the form of front pay "should not be awarded unless reinstatement is impracticable or impossible." *Williams v. Valentec Kisco, Inc.,* 964 F.2d 723, 730 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). *See also Brooks v.*

*Woodline Motor Freight, Inc.,* 852 F.2d 1061, 1065 (8th Cir.1988) (finding of substantial animosity precluding reinstatement was supported by testimony from employer's vice president that he "wished he could choke" the plaintiff). "The friction arising from the litigation process itself is not alone sufficient to deny employment since 'a court might deny [employment] in virtually every case if it considered the hostility engendered from litigation as a bar to relief.'" *Dickerson v. Deluxe Check Printers, Inc.,* 703 F.2d 276, 281 (8th Cir.1983). The district court's decision whether to order reinstatement or front pay is reviewable only for an abuse of discretion. *Williams, supra,* 964 F.2d at 730.

The present Kansas City terminal manager, David McCoy, was not employed at the terminal when others decided to first demote and then terminate Philipp. McCoy testified that he would reinstate Philipp and work hard to make him part of the management team. Philipp concedes that the only remaining supervisor at the Kansas City terminal is Robert Willis, and that he and Willis "get along fairly well." Those supervisors who allegedly discriminated against Philipp are no longer with ANR. Accordingly, no showing has been made that the reinstatement is either impracticable or impossible and we conclude the district court did not abuse its discretion in awarding reinstatement.

### V.

■ Philipp next argues the district court abused its discretion in denying his request for prejudgment interest on the backpay awarded for both his demotion and retaliatory refusal to rehire claims. An award of prejudgment interest is discretionary and involves at least two considerations: (1) it compensates a plaintiff for the money damages incurred and (2) where liability and the amount of damages are fairly certain, it promotes settlement and deters an attempt to benefit unfairly from the inherent delays of litigation. *EEOC v. Rath Packing Co.,* 787 F.2d 318, 333 (8th Cir.), *cert. denied,* 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986). The decision to award or deny prejudgment

interest falls within the sound discretion of the district court and will only be reversed upon a finding of an abuse of discretion. *Id.*

The trial court denied prejudgment interest based on ANR's "continued financial plight" and the fact that "liability was far from clear in this case." Two juries split on verdicts with respect to the 1984 demotion. Although Philipp eventually succeeded on his demotion claim, the jury rejected his discharge claims. Therefore, the district court concluded that "liability was far from clear." This conclusion was not an abuse of discretion and thus we affirm the court's decision not to grant prejudgment interest.

### VI.

 Finally, Philipp argues the district court abused its discretion in rejecting the plaintiff attorneys' fee request of more than $420,000 as unreasonable, excessive, and based upon unclear and unreliable records. We initially note the plaintiff bears the burden of establishing an accurate and reliable factual basis for an award of attorneys' fees, *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983), and that the district court has wide discretion in making a fee award determination. *Rogers v. Kelly,* 866 F.2d 997, 1001 (8th Cir.1989).

Philipp's counsel sought fees for four attorneys and one paralegal: lead trial counsel Karen Howard; associate counsel Ann Robards and Gwen G. Caranchini; Brian Wolfman, Washington counsel who had assisted on the reply to ANR's petition for certiorari in the United States Supreme Court; and paralegal Kliethermes. Concluding that plaintiff's counsel sought compensation "far in excess of what is 'reasonable,'" based on "unclear and unreliable records," the district court reduced the requested $421,004.75 fee to $190,492.80.

Among other reasons given to reduce the fee award, the district court found what appeared to be many clerical errors in the time sheets. For example, Ms. Caranchini's time sheets reflected that she spent 30.45 hours on trial and preparation on one day, April 26, 1993. Further, the court noted that in almost every instance of recorded travel time, Ms. Howard and Ms. Caranchini reported exactly one hour, without any destination or point of origin identified. The court stated that such "allocations are highly suspect considering the travel time from Ms. Caranchini's office to the courthouse is between six and eight miles."

The court also stated that the fee request was based upon duplicative and inflated efforts. The court stated that it was unnecessary to employ three attorneys to present this discrimination case which involved relatively straightforward legal and factual issues. Accordingly, the court eliminated the award requested for Ms. Robards, who served as a third chair at trial. Additionally, the court reduced the fee award request finding that many hours claimed were based upon the performance of clerical duties, including 65 hours Ms. Howard devoted to preparing the fee application. *See Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 2472 n. 10, 105 L.Ed.2d 229 (1989).

We reject outright, counsel's claim that the reduction in the fee award was based on the court's "denigration of female attorneys' work in the courtroom as opposed to male attorney work." Appellant's brief at 43. This claim is apparently based on counsel's view that the court reduced only the *"female* lawyers' fee request." *Id.* (emphasis in original). Quite the contrary is true. Counsel fail to mention that the court uniformly reduced the reasonable hourly rate of *all* attorneys, including Mr. Wolfman, to $120 an hour. Since the fee requested for Mr. Wolfman was based on a rate of $180 per hour, this represents a 33% reduction in his fees. Perhaps, instead, counsel find fault with the court's reduction of Howard's claimed 1,864.30 hours, Caranchini's 361.75 hours, and Robards 170.5 hours, while the court did not reduce the number of hours attributable to Mr. Wolfman. Wolfman, a Washington, D.C. attorney, who was involved in preparation of the writ of certiorari proceedings, claimed only 8.2 hours for his work, an amount that is neither unreasonable nor excessive.

Based on the foregoing we conclude the district court did not abuse its discretion in making its fee award determination.

## VII.

 We now turn to the issues raised on cross-appeal. ANR first argues that Philipp failed to set forth the claim of retaliatory refusal to rehire in either the EEOC charge or the complaint, and that therefore the district court erred in refusing to enter judgment as a matter of law for ANR on this claim.

 It is clear that a prerequisite to filing suit under the ADEA is the filing of charges with the EEOC. A plaintiff may raise claims in his lawsuit which "grow out of" or are "like or reasonably related" to the administrative charges. *Wentz v. Maryland Cas. Co.*, 869 F.2d 1153, 1154 (8th Cir.1989). Here, the district court found that, in his EEOC charge, Philipp alleged retaliation by ANR of a "continuing nature." The court held that such allegation is "like or related" to his retaliatory refusal to rehire claim in the present litigation. We agree. *See EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 668 (8th Cir.1992) ("The permissible scope of an EEOC lawsuit is not confined to the specific allegations in the charge; rather, it may extend to any discrimination ... which reasonably can be expected to grow out of the investigation triggered by the charge.").

The district court also held that Philipp's complaint as a whole, particularly paragraph 25, provided ANR with sufficient notice of Philipp's retaliatory refusal to rehire claim:

Plaintiff was not offered any of the dock foreman positions or other positions which were available after May, 1990, but younger, less qualified persons were offered said positions.

Given the liberal construction rules of the Federal Rules of Civil Procedure, the court did not err in concluding that the retaliatory refusal to rehire claim was sufficiently pled and that ANR had fair notice of the claim. *See* Fed.R.Civ.P. 8(a), (e), (f).

## VIII.

 Finally, ANR argues that the decision to admit evidence of other ADEA suits against ANR was in violation of the hearsay rules and, notwithstanding our prior ruling in *Philipp I*, submission of the evidence was not compelled by the law of the case. We disagree.

Based on *Philipp I*'s directions on remand, the district court admitted the other lawsuits into evidence in order to substantiate a chart summarizing these other claims. The court refused to allow the complaints to be passed to the jury or given to them in deliberation. Instead, Philipp's counsel read to the jury the caption of the certified ADEA complaints together with a brief description of the plaintiff's age and job description. According to Philipp, these cases were similar in form and content to the ADEA complaints presented to this court in *Philipp I*. Both before and after the information was read, the trial court, at the request of ANR, gave the following instruction:

You have heard evidence of complaints of age discrimination which have been filed against ANR Freight System, Inc..... You are instructed such complaints are merely allegations of discrimination, and you may give this evidence as much or as little weight as you believe it deserves in determining the issue of whether [ANR] intended to discriminate against Mr. Philipp on the basis of his age. In weighing this evidence, you may take into consideration when the allegations were filed, where they were filed, and whether there is any similarity between the circumstances of those complaints and Mr. Philipp's allegations.

After the evidence was presented, the trial court permitted ANR to put on testimony of ANR's corporate counsel and vice president, who testified that none of the cases had resulted in verdicts against ANR, and three had resulted in adjudications for ANR.

There was no "clear error" or "manifest injustice" in the admission of the other lawsuits given the manner in which the evidence was admitted and therefore the law of the case doctrine applies. *See Liberty Mutual Ins. Co. v. Elgin Warehouse & Equip.*, 4 F.3d 567, 571 (8th Cir.1993). Further, even if we were to conclude the district court did not adequately consider hearsay and relevancy issues with regard to each of the individual complaints, in light of the carefully-worded

cautionary instruction and ANR's presentation of rebuttal evidence, there is no reversible error.

IX.

Based on the foregoing, the judgment of the district court is affirmed.