**Michael F. DeROCHE, Plaintiff,**

v.

**ALL AMERICAN BOTTLING CORPORATION, a Delaware Corporation, Defendant.**

**No. Civ. 98–675 (JRT/RLE).**

United States District Court, D. Minnesota.

May 10, 1999.

Mark Leslie Knutson, Lisa Danelle Wilson, Bye, Agnew, Dryer & Storaasli, Duluth, MN, for Plaintiff.

William Crawford Blanton, Jr., Ranelle Leier, Kathleen Mary Mahoney, David M. Wilk, Oppenheimer, Wolff & Donnelly, Minneapolis, MN, for Defendant.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Motion *in limine* of the Defendant All American Bottling Corporation ("All American"), which seeks to limit certain evidence at Trial, and upon the Defendant's Motion to Extend the Time in which to file any dispositive Motions.[1]

A Hearing on the Motions was conducted on February 11, 1999, at which time the Plaintiff, Michael F. DeRoche ("DeRoche"), appeared by Mark L. Knutson, Esq., and All American appeared by William C. Blanton, Esq.

For reasons which follow, All American's Motion *in limine* is granted in part, and denied in part, as discussed more fully in the text of this Order.[2]

### II. *Factual and Procedural Background*

This is an action arising out of events which followed the sale, in February of 1994, of Twin Ports 7-Up ("Twin Ports"), which was a soft drink distributorship that was located in Duluth, Minnesota, by Pepsico Corporation to All American. As a part of that transfer of ownership, All American considered those employees, who had previously worked at Twin Ports, for continued employment with All American. The hiring process included an interview with each of the existing employees of Twin Ports in order to determine if they would be employed by All American.

DeRoche, who was fifty-six years of age at the time of the sale, had worked for Twin Ports for 24 years. During his employment, DeRoche worked as a sales route driver. As a result of his having submitted a written application for employment, on or about February 18, 1994, DeRoche was interviewed for employment by Terrence J. McDaniel ("McDaniel"), and possibly by Eldred J. Wangelin ("Wangelin"), although neither party is certain regarding Wangelin's participation in the interview. What is certain, however, is that, at some point in the interview and hiring process, McDaniel sought, and received, input from James Klein ("Klein")

1. On the date of the Hearing, the court received All American's Motion for Leave to File a Reply in Support of its Motion *in limine*. This Motion was opposed by the Plaintiff, as being duplicative of All American's pending Motion, and as being untimely filed. Notwithstanding the objections of the Plaintiff, and in an effort to be fully informed on the parties' positions, we granted All American's Motion, and provided the Plaintiff with a similar opportunity to supplement his response.

 In addition, at the close of the Hearing, we informed All American that it's Motion to Extend the Time for Filing Dispositive Motions was denied. This Motion was premised upon the stated rationale that, "depending upon the Court's decision on Defendant's Motion *in limine*, All-American Bottling believes that it may be entitled to summary judgment on all claims of Plaintiffs * * *." *Defendant's Motion for Extension of Time* at ¶ 6. Given our resolution of All American's Motion *in limine*—as expressed in the text of this Order—and finding an absence of due diligence on the part of All American, in filing a Motion, for Summary Judgment within the established Pretrial deadlines, and we focus our discussion on their merits of All American's Motion *in limine*.

2. While denominated a Motion *in limine*, the All American's Motion seeks to alter the pretrial processing of this action and, therefore, we treat it as a nondispositive Motion.

regarding the applicants for the position for which DeRoche had applied.[3]

Klein was the assistant manager of Twin Ports, and DeRoche's immediate supervisor, prior to the sale of Twin Ports to All American. During the transition period—between the sale of Twin Ports to All American, and the actual transfer of operations to All American's management—Klein appears to have remained on the payroll of Twin Ports. See, *Defendant's Memorandum in Support* at 3–4; *Deposition of Terrence McDaniel* at 47. Prior to the actual transfer of operations to All American, however, Klein was offered the position as the general manager of the newly acquired All American Twin Ports facility. See, *Defendant's Memorandum* at 3. As All American admits, "Klein's employment status as of the time McDaniel asked him for information regarding the job applicants is not entirely clear ***." [4] *Id.* By both parties' accounts, DeRoche's job interview lasted approximately fifteen minutes. Later, when All American announced who would be a part of its newly established workforce, DeRoche was not included.

According to DeRoche, the reason that All American expressed for denying him employment—namely, that he was resistant to All American's plans to employ a new sales procedure—was merely a pretext for age animus. In support of his claim of age discrimination, DeRoche offers an account of a conversation that Steve Steele ("Steele"), who was employed at Twin Ports, and who was subsequently hired by All American as a sales route driver, had with Klein, regarding All American's decision not to hire Steele's brother-in-law for a merchandising position. According to Steele, Klein informed him that his brother-in-law was a "little too old for merchandising and route driving." *Plaintiff's Memorandum* at 6; *Deposition of Steve Steele* at 52. Steele further reported that Klein had commented that a merchandising job was a young man's position, and was a job for someone in their twenties or thirties. *Steele Deposition* at 55. DeRoche alleges that this conversation took place in the latter part of 1994, or in early 1995, which would place the conversation some 9 to 12 months after DeRoche was rejected for employment with All American. *Steele Deposition* at 54. At the time of his application for employment with All American, Steele's brother-in-law was in his late 30's. *Id.*

On February 1, 1995, DeRoche filed a charge of discrimination with the Minnesota Department of Human Rights which accused All American of engaging in age discrimination in its hiring practices. DeRoche commenced this action, in Minnesota District Court, in January of 1998. In

---

3. All American contends that the hiring input from Klein was received after the interview od DeRoche, and had no dispositive effect on the outcome of the employment decisions, while DeRoche asserts that Klein's hiring preferences were know at all times to McDaniel, and that, in fact, his determinations controlled the decision not to hire DeRoche. Indeed, DeRoche characterizes the hiring decision as a "collaboration," between McDaniel and Klein, and he alleges that the decision regarding who to hire was made by Klein, and related to McDaniel, prior to DeRoche's interview. See, *Plaintiff's Memorandum in Opposition* at 3; *Deposition of Michael DeRoche* at 118–19.

4. All American has attempted to clarify its statement, that Klein's employment status, as of the time that McDaniel asked him for information regarding the job applicants, "is not clear." See, *Defendant's Reply Brief in Support of Motion in limine* at 4 n. 2. All American notes that Klein's date of hire was February 18, 1994, which was the Friday before Monday, February 21, 1994, that served as the date on which the newly hired employees began their employment with All American. As a result, All American argues that the decision not to hire DeRoche clearly was made at a time prior to Klein's having assumed the position as All American's general manager. According to All American, the lack of clarity, to which it had earlier referred, was directed at whether Klein remained a candidate for the general manger position, or whether the position had actually been offered to Klein at the time of the challenged decision.

his Complaint, DeRoche alleges that All American illegally denied him employment because of his age, in violation of Minnesota Statutes Sections 363.01 *et seq.*, and 181.81. On February 11, 1998, All American timely removed the action to this Court. See, *Title 28 U.S.C. § 1441.*

In its present Motion, All American seeks to exclude, at Trial, any evidence of Klein's allegedly discriminatory comments, as All American contends that Klein was not, during the period that is relevant to All American's rejection of DeRoche, an employee of All American. According to All American, whatever may have been Klein's attitudes toward the age of job applicants, those attitudes should not be vicariously applied to All American. Against this backdrop, we consider All American's Motion *in limine.*

### III. *Discussion*

 A. *Standard of Review.* Applying Minnesota's familiar framework for analyzing claims of age discrimination, a plaintiff, who seeks to prove that age animus played a prohibited role in the decision not to hire him, must make a *prima facie* showing that: (1) he is a member of a protected group; (2) he sought and was qualified for opportunities that the employer made available to others; (3) he, despite his qualifications, was denied those opportunities; and (4) the opportunities remained available, or were given to others with his qualifications. See, *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn.1999) (applying the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), analysis to claims of employment discrimination under the MHRA); *Snow v. Ridgeview Medical Ctr.*, 128 F.3d 1201, 1205 (8th Cir. 1997); *Braziel v. Loram Maintenance of Way, Inc.*, 943 F.Supp. 1083, 1094 n. 8 (D.Minn.1996). Once the plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer to proffer a legitimate, nondiscriminatory business reason for the adverse employment action. See, *Fletcher v. St. Paul Pioneer Press*, supra at 102. "Upon articulation of a legitimate and non-discriminatory reason for the adverse employment action, the burden shifts back to the employee to show that the proffered reasons were not the true reason for the action, but were instead a pretext for discrimination." *Id.*

 To satisfy his initial burden, a plaintiff must demonstrate that " 'conduct or statements by persons involved in [the employer's] decision-making process reflective of a discriminatory attitude sufficient to allow a reasonable jury to infer that the attitude was a motivating factor in [the employer's] decision * * *.' " *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir.1999), quoting *Feltmann v. Sieben*, 108 F.3d 970, 975 (8th Cir.1997). " 'Stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself,' " are insufficient to establish a causal relationship between the conduct, or statements, and the adverse employment action. *Braziel v. Loram Maintenance of Way, Inc.*, supra at 1095, quoting *Philipp v. ANR Freight System, Inc.*, 61 F.3d 669, 673 (8th Cir.1995). "Thus, actions and comments by employees not involved in a[n] [employment] decision cannot provide a basis for charging other employees with discrimination." *Id.*

B. *Legal Analysis.* All American views the participation of Klein, in its decision not to hire DeRoche, as being outside of the decisional process. It contends that, because of Klein's status as an employee of Twin Ports, at the time of DeRoche's interview with McDaniel, he cannot be considered to be a "decisionmaker" within the meaning attributed to that term by the applicable case law. With respect to McDaniel's consultation with Klein, prior to the decision to reject DeRoche's application for employment, All American characterizes that communication as, at most, no more than a recommendation by a third party, which All American asserts cannot, and should not,

be a basis for liability on the part of the would-be employer. Upon its reading of the case law, All American suggests that, in the event that a potential employer relied upon a recommendation that had been premised upon a discriminatory animus, the aggrieved party's recourse would be a legal action against the former employer, and not the future one. See, e.g., *Rutherford v. American Bank of Commerce*, 565 F.2d 1162, 1163–64 (10th Cir.1977) (plaintiff sued former employer where it informed a potential future employer of the circumstances of discharge and a letter of reference was modified to reflect that the former employee had filed sexual discrimination charges); *Pantchenko v. C.B. Dolge Co.*, 581 F.2d 1052, 1054 (2d Cir.1978) (plaintiff sued former employer for refusing to issue a letter of recommendation and for making negative and untrue remarks about the plaintiff to a prospective employer).

As noted, DeRoche does not view the relationship between Klein, and All American's decision not to hire him, as so causally tenuous as does All American. According to DeRoche, Klein was an employee of Twin Ports in title alone, as it was common knowledge, amongst the employees of both Twin Ports and All American, that Klein was to assume the position of All American's general manager upon the transfer of the operations to All American. See, *Plaintiff's Memorandum* at 11; *Affidavit of Jim Barbo* at ¶ 3. As a result, DeRoche insists that the opinions of Klein would have had a great influence on McDaniel, who would also have been aware that, in the final analysis, Klein would be managing the newly established Twin Ports branch of All American's operations. Consistent with this view, Klein's input into the decisional process, which led to the rejection of DeRoche's job application, was not, in the opinion of DeRoche, a mere recommendation, which McDaniel was free to accept or dismiss upon his own assessment of DeRoche's suitability for employment.

To buttress his position, that the knowledge of Klein's eventual promotion to the position as the general manager of All American would securely place Klein within the decisional process, DeRoche cites *Finch v. Hercules*, 865 F.Supp. 1104 (D.Del.1994). In *Finch*, a newly hired CEO expressed the view that "the young people in the company want to bring Hercules back to where it ought to be again * * *." *Id.* at 1112. When the defendant, in *Finch*, moved for Summary Judgment, asserting that the CEO's comments were only stray remarks, and were made outside of the decisional process, the Court rejected the view, reasoning as follows:

"When a major company executive speaks, 'everybody listens.' In the corporate hierarchy, when an executive's comments prove to be disadvantageous to a company's subsequent litigation posture, it cannot compartmentalize this executive as if he had nothing more to do with company policy than the janitor or watchman."

*Id.* at 1124, quoting *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43 (3rd Cir. 1989).

Due to the uncertain status of Klein, in relation to the decision not to hire DeRoche, we cannot say that the holding, in *Finch*, is dispositive of the issue before us. *Finch* is informative as to the relationships which can interconnect superiors and subordinates, especially when the subordinate recommends specific, future employment actions. See also, *E.E.O.C. v. Manville Sales Corp.*, 27 F.3d 1089, 1094 (5th Cir. 1994) (noting that evidence of a manager's age-related statements in an age discrimination case was relevant even though the manager did not formally make the final decision to discharge the plaintiff-employee where he recommended the discharge and was relied on to some degree); *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir.1994) (holding that, in an age discrimination case, the Court is to consider "whether the comments were made by a decision maker or by an agent within the

scope of his employment; whether they were related to the decision-making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time to the act of termination."); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1145 (5th Cir.1991) (holding that age-related comments by various supervisors of plaintiff-employee would support finding of discrimination even though higher level official made the final decision to terminate him). Simply put, we cannot say, on this Record—at least as a matter of law—that Klein's role in advising McDaniel, on the suitability of the Twin Ports' employees who should be retained by All American, was purely gratuitous, and should not bind All American. Such a determination is fact-dependent and, at least on the Record presented, is not susceptible to a conclusive determination at this juncture.

■■ The Defendant alternately posits that, even if Klein were considered to be integral to the decision not to hire De-Roche, that his ageist comments to Steele, who was a nondecisionmaker, which were purportedly uttered approximately one year after DeRoche was denied employment, are too remote to the decision rendered in DeRoche's case, and are, therefore, irrelevant. Of course, " '[n]ot all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support such an inference.' " *Simmons v. Oce–USA*, 174 F.3d 913, 914 (8th Cir.1999), quoting *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir.1999). Under the *McDonnell Douglas* analysis, "stray remarks, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process are insufficient to establish a *prima facie* case." *Gold Star Taxi and Transp. Service v. Mall of America Co.*, 987 F.Supp. 741, 746 (D.Minn.1997), citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276–78, 109 S.Ct. 1775, 104 L.Ed.2d 268. Stray remarks "that are remote in time do not

support a finding of pretext for intentional discrimination." *Walton v. McDonnell Douglas Corp.*, supra at 428; accord *Spencer v. Stuart Hall Co.*, 173 F.3d 1124, 1130 (8th Cir.1999); *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 778–79 (8th Cir.1995).

In *Walton*, the remark of a supervisor, which preceded the challenged termination decision by two years, was deemed too remote, and innocuous, to satisfy the plaintiff's burden of over-coming the legitimate business justification that the employer offered for the employee's termination. *Walton v. McDonnell Douglas Corp.*, supra at 427; see also, *Smith v. Berry Co.*, 165 F.3d 390, 396 (5th Cir.1999), quoting *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir.1995) ("[A] single comment, made several years prior to the challenged conduct, is a stray remark too remote in time to support an inference of sex discrimination in later employment actions."); *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir.1997) (remark uttered two years prior to decision too remote); *Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311, 1316 (8th Cir.1996) (discriminatory comments pre-dating termination by fourteen months held to be stray remarks); *Frieze v. Boatmen's Bank of Belton*, 950 F.2d 538, 541 (8th Cir.1991) (four year gap between the statement, and the job termination, rendered the statement effectively stale as an inference of intentional discrimination); *Smith v. DataCard Corp.*, 9 F.Supp.2d 1067, 1079 (D.Minn.1998), citing *Guthrie v. Tifco Indus.*, 941 F.2d 374, 378–79 (5th Cir.1991) (potentially discriminatory remark, which preceded the demotion by one year, was considered too remote).

■ Here, Klein's purported comments to Steele, in late 1994 or early 1995, are so temporally remote to DeRoche's employment rejection, as to be causally unrelated. As a result, any relevance that they might have to the Trial of DeRoche's claims is clearly outweighed by their prejudice to All American. See, *Rules 401 and 403,*

*Federal Rules of Evidence.* As urged by All American, if Jurors were allowed to consider Klein's well-after-the-fact statements to Steele, they would be encouraged to punish All American, irrespective of the actual influence that Klein's post-decisional views may have had upon McDaniel's determination to reject DeRoche's employment application.

Assuming that they have been accurately reported, Klein's comments to Steele occurred approximately one year after All American decided not to hire DeRoche, and were not uttered to anyone who was involved in All American's hiring process. While, taken as true, Klein's alleged commentary does reflect an attitude that the positions of a merchandiser, and a route driver, were best suited to younger individuals and, facially, reveal as ageist disposition that is not favored in the law. Nevertheless, the comments are so distant in time, and in proximity to the decisional process which resulted in All American's decision not to hire DeRoche, that they are more prejudicial than probative.

Therefore, on the limited Record before us, we conclude that, standing alone, Klein's purported statements to Steele, which were uttered well after All American's decision to reject DeRoche's employment application, are not relevant to DeRoche's age discrimination claim under the MHRA. Should these comments be joined by age inimical statements, by those involved in DeRoche's employment rejection, which are more contemporaneous with that employment decision, then the relevance of Klein's asserted statements to Steele may be reexamined at the time of Trial. On this Record, however, where no other age-related statements have been drawn to our attention, we conclude that the comments in question are to remote to be causally related to DeRoche's employment application. Accordingly, we grant All American's Motion *in limine* to this limited extent, but without prejudice to DeRoche's opportunity, at Trial, to proffer age discriminatory comments—if any there

should be—upon a proper showing of cause and effect with specific reference to DeRoche's employment rejection.

NOW, THEREFORE, It is—

ORDERED:

1. That the Defendant's Motion to Extend the Time to File Dispositive Motions [Docket No. 28] is DENIED.

2. That the Defendant's Motion for leave to File a Reply in Support of Motion *In Limine* [Docket No. 37] is GRANTED.

3. That the All American's Motion *In Limine* [Docket No. 24] is GRANTED in part, as more fully explained in the text of this Order.