**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**MINNESOTA DEPARTMENT OF CORRECTIONS; American Federation of State, County, and Municipal Employees, Unit 208; Minnesota Association of Professional Employees; Middle Management Association; American Federation of State, County, and Municipal Employees, Council No. 5, AFL–CIO; Minnesota Nurses Association; and Minnesota Law Enforcement Association, Defendants.**

Civil No. 08–5252 (PAM/FLN).

United States District Court, D. Minnesota.

April 8, 2010.

---

Jean P. Kamp, Equal Employment Opportunity Commission, Chicago, IL, Jessica A. Palmer–Denig, Laurie A. Vasichek, Nicholas J. Pladson, Equal Employment Opportunity Commission, Minneapolis, MN, John–Na C. Hendrickson, for Plaintiff.

Gary R. Cunningham, Kristyn M. Anderson, Minnesota Attorney General's Office, St. Paul, MN, Gregg M. Corwin, Cristina Parra Herrera, Gregg M. Corwin & Associates Law Office, PC, St. Louis Park, MN, David E. Krause, Ronald L. Rollins, Krause & Rollins Chtd., Kathryn M. Engdahl, Metcalf Kaspari Howard Engdahl & Lazarus, Ann E. Walther, James P. Michels, Karin E. Peterson, Rice Michels & Walther, Minneapolis, MN, for Defendants.

### MEMORANDUM AND ORDER

PAUL A. MAGNUSON, District Judge.

This matter is before the Court on cross-Motions for Summary Judgment

filed by the Equal Employment Opportunity Commission ("EEOC"), Defendant Minnesota Department of Corrections ("DOC"), and Rule 19(a) Defendant Minnesota Law Enforcement Association ("MLEA"). The other Rule 19(a) Defendants are American Federation of State, County, and Municipal Employees, Unit 208 ("AFSCME Unit 208"), Minnesota Association of Professional Employees ("MAPE"), and American Federation of State, County, and Municipal Employees, Council No. 5, AFL–CIO ("AFSCME"); these Defendants have not moved separately for summary judgment but do not oppose the relief the EEOC seeks. The Court will refer to the Rule 19(a) Defendants collectively as the unions. For the reasons that follow, the Court grants the EEOC's Motion in part, and denies both the DOC's Motion and the MLEA's Motion.

## BACKGROUND

The EEOC brought this action in September 2008, contending that the collective bargaining agreements ("CBAs") between the unions and the DOC violate the Age Discrimination in Employment Act, 29 U.S.C. § 633a ("ADEA"). The various CBAs all provide for early retirement incentive programs for DOC employees. The parties refer to these programs as the "age 55 cliff." In the DOC's early retirement incentive program, an employee who retires during the pay period of his or her 55th birthday is eligible to receive a continuation of the employer's contribution toward the employee's health and dental insurance premiums until the employee reaches age 65.[1] An employee who is older than 55 at the time of retirement, however, is not eligible to receive any employer contribution toward health and dental

insurance. The EEOC asserts that such provisions violate the ADEA.

The early retirement incentive programs have a long history, having been included in the DOC's CBAs since the early 1980s. In 2000, after receiving employee complaints about the programs, the Minnesota Department of Employee Relations requested that the Minnesota Attorney General evaluate the legality of the programs under the ADEA. The Attorney General opined that, as written, the early retirement incentive programs might violate the ADEA. The Attorney General's opinion also noted, however, that the ADEA contained a safe harbor provision related to early retirement incentives that might exempt the CBAs from the ADEA. Finally, the opinion stated that the EEOC would find that the early retirement incentive programs violated the ADEA, and warned that "[w]hether courts in this jurisdiction would conclude that the State [early retirement incentives] are lawful under the [early retirement incentive] safe harbor provision of the ADEA is far from clear...." (Jan. 31, 2001, letter from David W. Merchant, Asst. Attorney General, to Julien C. Carter, Commissioner, Minnesota Dep't of Employee Relations, at 7.)

After the Attorney General's opinion, the DOC began renegotiating the CBAs with the various unions. According to the EEOC, rather than simply removing the illegal early retirement provisions, the DOC insisted on substantial concessions from the unions in exchange for removing the provisions. The DOC disputes this version of the negotiations, insisting that the unions wanted to keep the early retirement incentive programs in the CBAs. Eventually, all CBAs save one were modi-

---

1. The CBA between the DOC and the MLEA is slightly different, allowing employees between the ages of 50 and 55 to retire and receive a continuation of benefits until age 65. MLEA-

covered employees who retire before age 55 receive a reduced benefit; those who retire at age 55 receive full benefits.

fied to change the early retirement incentive so that employees with the required service credits could receive the incentive after age 55. The only CBA that still contains an unmodified early retirement incentive provision is the CBA with the MLEA. Almost all of the modified CBAs, however, contain a so-called "antigrandfathering clause" excluding from eligibility any employee who was age 55 or older at the time the CBA was modified. The EEOC challenges both the age 55 cliff in the MLEA's CBA and the anti-grandfathering clause.

## DISCUSSION

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir.1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 323, 106 S.Ct. 2548; *Enter. Bank,* 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The parties have cross-moved for summary judgment, agreeing that only issues of law remain for decision.

■ The ADEA, which prohibits employment discrimination "because of [an] individual's age," 29 U.S.C. § 623(a)(1), was amended in 1991 to specifically provide that an employer may not discriminate on the basis of age in employment benefits such as pensions. This amendment, the Older Workers Benefit Protection Act ("OWBPA"), allows an employer to maintain an early retirement incentive program such as that at issue here only if the program "is a voluntary early retirement incentive plan consistent with the relevant purpose or purposes of [the ADEA]." *Id.* § 623(f)(2)(B)(ii). There is no dispute that the ADEA applies to the early retirement incentive programs at issue here.

The legality of early retirement incentives is a much-litigated and unsettled area of the law. The pertinent question for this case is whether the Supreme Court's recent decision in *Kentucky Retirement Systems v. EEOC,* 554 U.S. 135, 128 S.Ct. 2361, 171 L.Ed.2d 322 (2008), changes the evaluation of early retirement incentive programs. The EEOC maintains that it does not, the DOC insists that it does.

### A. ADEA Prima Facie Case

The plan at issue in *Kentucky Retirement Systems* was a disability retirement plan that imputed years of service for an employee who became disabled before accumulating enough service time to retire with pension benefits, but did not similarly add years of service for an employee who became disabled after accumulating sufficient service time for pension benefits. The Supreme Court found that this type of plan did not violate the ADEA. According to the Court, the disparate treatment between the two classes of employees resulted not from an individual employee's age,

but from his or her pension status. The Court noted that its prior holdings made clear that age and pension status were "analytically distinct." *Id.* at 2367 (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)). Because the disparate treatment resulted from a disabled employee's pension status, and not because of that employee's age, the Court found that the ADEA did not apply.

This holding is unremarkable, and simply does not change the entire ADEA landscape, as the DOC argues. As an initial matter, any other decision would have imposed an unworkable burden on a pension system that was trying to help employees who were disabled on the job. In the system in place in Kentucky, if an employee had to work 15 years to become pension-eligible but became disabled after 10 years, the employer would impute 5 years of service to the employee to allow him or her to be eligible for full pension benefits. If a fully vested employee becomes disabled, however, there is no rational method for choosing the amount of service time to impute to make such an imputation totally without regard to pension status. And the ADEA does not require the employer to attempt to make a pension-neutral decision, if pension status is not a proxy for age. There was simply no evidence in *Kentucky Retirement Systems* that pension status was a proxy for age.

The Supreme Court was careful to emphasize that its decision "in no way unsettles the rule that a statute or policy that facially discriminates based on age suffices to show disparate treatment under the ADEA." *Id.* at 2363. Thus, if the early retirement incentives in place in the DOC's CBAs are facially discriminatory, the EEOC has met its burden to show disparate treatment under the ADEA.

The relevant distinguishing feature among different DOC employees with regard to the age 55 cliff is age, not pension status or any other trait. An employee with three years of service may retire at age 55 and receive full health and dental insurance benefits until age 65. An employee who does not reach three years of service until age 56 does not have this option, nor does any employee who is older than 55 when he or she retires. Age is the only distinguishing trait. The early retirement incentives in the DOC's CBAs are facially discriminatory and, as such, violate the ADEA.

**B. Intent**

The DOC also argues that the decision in *Kentucky Retirement Systems* means that an ADEA plaintiff must also establish an intent to discriminate, even if a plan is facially discriminatory. The DOC makes much of the Court's statement that, to prove age discrimination, a plaintiff "must prove that age *actually motivated* the employer's decision." *Kentucky Retirement Sys.*, 128 S.Ct. at 2366. But the DOC takes this statement out of context. The Court was merely stating the obvious: an age discrimination plaintiff must show that age, and not some other factor, was the driving force behind the allegedly discriminatory act.

The law on intent is clear: when a plan is discriminatory on its face, "intent to discriminate can be presumed." *Jankovitz v. Des Moines Indep. Cmty. Sch. Dist.*, 421 F.3d 649, 653 (8th Cir.2005). The plan here is facially discriminatory, and the EEOC need not otherwise prove the DOC's intent.

**C. Safe Harbor**

The DOC contends that the plan is not illegal because of the "safe harbor" provided to early retirement incentive

plans in section 623. That section provides, in relevant part:

It shall not be unlawful for an employer, employment agency, or labor organization—

(2) to take any action otherwise prohibited [by the ADEA]—

(B) to observe the terms of a bona fide employee benefit plan—

(ii) that is a voluntary early retirement incentive plan consistent with the relevant purpose or purposes of [the ADEA].

29 U.S.C. § 623(f)(2)(B)(ii). The DOC argues that the early retirement program in the CBAs is voluntary and consistent with the ADEA's purpose. The EEOC disagrees.

The DOC relies almost exclusively on *Auerbach v. Board of Education,* 136 F.3d 104, 114 (2d Cir.1998), to support its safe-harbor argument. The DOC even criticizes the EEOC's alleged failure to distinguish *Auerbach* and contends that, because of this failure, the DOC is entitled to summary judgment. (*See* DOC's Reply Mem. at 4 ("Since the EEOC failed to distinguish *Auerbach,* summary judgment is appropriate.").) This is an odd position for several reasons. First, *Auerbach* is from the Second Circuit, not the Eighth, and its holding has not been adopted by any Eighth Circuit panel. As such, it is not binding authority that the EEOC or any other party needs to "distinguish." Second, the plan in *Auerbach* allowed employees who were 55 and had 20 years of service to retire and receive full payment for their accumulated sick leave and an early retirement incentive of $12,500. *Id.* at 107. A teacher over age 55, however, could retire with these incentives whenever he or she reached 20 years of service. *Id.* This is in contrast to the plan at issue here, where no employee over the age of 55 can take advantage of the early retirement incentives. Finally, the court in

*Auerbach* recognized that "[a]n early retirement incentive plan that withholds or reduces benefits to older retiree plan participants, while continuing to make them available to younger retiree plan participants so as to encourage premature departure from employment by older workers conflicts with the ADEA's stated purpose to prohibit arbitrary age discrimination in employment." *Id.* at 114. This is exactly what the early retirement incentive program in the DOC's CBAs does.

As the EEOC argues, this case is much more akin to the facts in *Jankovitz,* 421 F.3d 649 (8th Cir.2005), a case that is binding on this Court. The plan in *Jankovitz* gave employees an early retirement incentive of payment for unused sick days, a lump sum based on a percentage of the employee's annual salary, and payment of health insurance premiums until age 65. However, employees over the age of 65 were not eligible for any of the early retirement incentives. The Eighth Circuit held that this plan violated the ADEA and was not eligible for the early retirement incentive program safe harbor.

District Judge Longstaff's description of the plan in *Jankovitz* could have been written about the DOC's early retirement incentive program: "The problem lies with the fact that the Plan defines 'early' in terms of the employee's age, rather than years of service or salary." *Id.* at 652 (quoting slip op. at 11). The Eighth Circuit agreed with the district court that such a plan was discriminatory in its face. *Id.* at 653.

As here, the employer in *Jankovitz* argued that section 623(f)'s safe harbor insulated the plan from liability. The Eighth Circuit disagreed, finding that the plan was inconsistent with the ADEA's relevant purpose, which is "to prohibit arbitrary age discrimination in employment." *Id.* at 654. As the panel stated, "[a]rbitrary age

discrimination occurs when an employer denies or reduces benefits based *solely* on an employee's age. That is precisely what defendant's [early retirement program] does." *Id.* (emphasis in original).

The *Jankovitz* decision specifically contrasted the plan at issue there with the plan in *Auerbach,* noting that the Des Moines plan "materially differ[ed]" from the plan in *Auerbach. Id.* The court highlighted the *Auerbach* court's description of the plan in that case, noting that the *Auerbach* plan allowed retirement *"regardless of [the employee's] actual age." Id.* at 655 (quoting *Auerbach,* 136 F.3d at 107–08) (emphasis in *Jankovitz* ). The plan in *Jankovitz* based its benefit on the age of the employee at retirement, and as the court noted, "adverse changes in employment benefits based solely upon age are inconsistent with the purposes of the ADEA." *Id.* Therefore, the court found that the plan "violates the ADEA and does not fall within the safe harbor provision." *Id.*

The MLEA argues that the EEOC's reading of the safe harbor provision would render all early retirement incentive programs per se illegal under the ADEA. However, an early retirement program that does not condition benefits solely on age, such as that in *Auerbach,* is not illegal. Nor are the amended CBAs illegal: they offer an incentive to employees with the required service time who retire before the "normal" retirement age in the form of payment of health insurance premiums until that retirement age. That incentive is not based solely on age, but rather is based on service time and age. The MLEA contends that the age 55 cliff is the only way to encourage employees to retire early. The MLEA does not explain why permitting a 56–year–old employee to receive an early retirement benefit will somehow not encourage early retirement.

As with the plan at issue in *Jankovitz,* the benefits in the DOC's early retirement program are based solely on an employee's age. While an employee must also have three years of service, the triggering event is age; employees who do not achieve three years of service before they turn 55 are simply not eligible for the early retirement incentive. The early retirement incentive program does not fall within the ADEA's safe harbor, and as such violates the ADEA.

Similarly, the anti-grandfathering provision in the amended CBAs is unlawful. There is no doubt that the refusal to permit employees older than 55 to benefit from the amended early retirement incentive program is discrimination based solely on the employee's age. Thus, the anti-grandfathering provisions also violate the ADEA.

### D. Mandatory Retirement Ages

The DOC and the MLEA argue that the ADEA's provision allowing for mandatory retirement of law-enforcement officers at age 55 provides support for their argument that the early retirement incentive program is consistent with the purposes of the ADEA. It is undisputed, however, that the DOC does not mandate retirement for law-enforcement officers at age 55; if it did, there would be no need to have an early retirement incentive program. Rather, the DOC encourages early retirement for some 55–year–old workers— those who have achieved three years of service—and discourages early retirement for other 55–year–old workers—those who have not yet reached three years of service. Moreover, the DOC's argument that the stresses of corrections jobs provide a justification for the early retirement's age 55 cut-off is disingenuous. If the DOC wanted to relieve an employee's job stress by offering early retirement incentives, it

should base those incentives not on age, but on years of service.

### E. Damages

The EEOC seeks several categories of damages, in addition to an injunction removing the age 55 cliff from the MLEA's contract and removing the anti-grandfathering clauses from the other CBAs.

#### 1. *Pecuniary damages*

First, the EEOC contends that the Court should award damages in the amount the DOC would have paid in employer contributions for health and dental insurance from 1995 to the present absent the age 55 cliff. The EEOC asks for prejudgment interest on this amount, and also seeks front pay for claimants who are not yet 65 "in an amount equal to the employer contributions, reduced to present day value, that they would have received under the [early retirement incentive program]." (EEOC's Supp. Mem. at 24.) In addition, the EEOC contends that the Court should increase both the back pay and front pay awards by 15% because employer contributions to health insurance are not taxable income, but any damage award in this case would be taxable.

The DOC continues to argue, as it did when pressing an unsuccessful motion to compel discovery, that damages can be awarded only to retiring employees who could not otherwise secure health and dental insurance. While it may be true that some employees did not need and would not have used DOC-sponsored health insurance, it is also true that even employees who might have had access to other health insurance would have chosen the DOC's plan instead. This Court has already ruled that:

> The measure of damages is the amount of health-insurance premiums DOC would have paid but for the alleged discrimination. There is no mitigation of

this damage amount; if the discrimination is proved, the damages are set. It makes no difference whether an individual retiree was able to secure benefits from a different source.

(Feb. 24, 2010, Order (Docket No. 121) at 2.) Thus, the DOC's argument that the mere availability of other health insurance negates damages is not only incorrect, it is an untimely motion to reconsider this Court's determination that the DOC's position has no merit.

The DOC also contends that the EEOC is not entitled to seek an award for damages incurred starting in 1995 and asks that the EEOC be precluded from doing so based on both the statute of limitations and the doctrine of laches. The DOC asks for a limitation on pecuniary damages to employees retiring after September 24, 2004. (DOC's Supp. Mem. at 28.) The DOC concedes that there is no statute of limitations for the EEOC, but asks the Court to impute one given the EEOC's delay in this matter.

The DOC notes that the EEOC first had notice of DOC employees' claims in October 2002, when a DOC employee named Marilyn Gierke submitted an intake form to the EEOC alleging age discrimination as a result of the age 55 cliff. Ms. Gierke did not, however, file an official charge of discrimination until 2005, which is when the EEOC first gave the DOC official notice of the claim. The EEOC then investigated the claim for two more years, finding probable cause in August 2007. Some of the delay between 2005 and the filing of this lawsuit was mutual; the DOC asked the EEOC to suspend its investigation and decision until after the Supreme Court ruled in *Kentucky Retirement Systems*. The DOC contends that it was prejudiced by the EEOC's delay, because an earlier adverse decision would have given the

DOC more leverage in negotiating out the age 55 cliffs in the various CBAs.

The DOC's argument on this point is a bit disingenuous. The EEOC's evidence shows that the DOC, and not most of the unions, wanted to keep the age 55 cliff in the CBAs. Thus, the DOC did not need leverage to remove the provisions—it likely could have removed the provisions with little or no resistance from most of the unions involved. Moreover, the evidence also shows that the DOC was aware at least by 2001, when the Attorney General's opinion issued, that the age 55 cliff might violate the ADEA. To claim now that it had no notice of this fact is simply not true.

The DOC is correct, however, that requiring payment of damages back to 1995 is excessive and is not warranted by the DOC's conduct in this matter. Although the EEOC contends that the law was clear that the early retirement incentive programs in the DOC's CBAs violated the ADEA, the above discussion establishes without a doubt that the law surrounding early retirement programs remains unsettled to this day. The DOC's position was taken in good faith, and neither the DOC nor the people of Minnesota should be forced to pay 15 years' worth of damages.

■ A charge of discrimination related to the early retirement incentive programs was filed in 2005. If that individual had filed suit, her damages would have been limited by the ADEA's 300–day statute of limitations. 29 U.S.C. § 626(d)(2). Although the EEOC is not subject to that statute of limitations, the equities of this case require some limitation on the damages the DOC can be required to pay. In the Court's judgment, applying the ADEA's statute of limitations for individual claims both fairly compensates the employees injured by the now-illegal policy and punishes the DOC for its maintenance of that policy. Thus, damages are award-

ed, as back pay and front pay, for the period of September 24, 2004, to the present. Given the Court's determination that damages may be awarded only for employees who retired or would have retired after September 24, 2004, employees subject to CBAs that were modified prior to this date are not eligible for damage awards. These CBAs include the State Residential School Education Association contract, the Commissioner's Plan, and the Managerial Plan. (*See* EEOC's Supp. Mem. at 7 n. 7 (listing dates contracts were revised to remove age 55 cliff).)

■ Prejudgment interest on this amount is not appropriate. The ADEA does not specifically provide for prejudgment interest. *Ryther v. KARE 11,* 864 F.Supp. 1525, 1530 (D.Minn.1994) (Doty, J.). Such an award is not necessary in this case either to compensate the claimants, to promote settlement, or to deter any "attempt to benefit unfairly from the inherent delays of litigation." *Philipp v. ANR Freight Sys., Inc.,* 61 F.3d 669, 674 (8th Cir.1995). As the DOC points out, the delays in this case were a result of the EEOC's delay in securing a charge from the aggrieved individual or were mutually agreed.

■ Finally, the application of a tax multiplier is likewise not appropriate on the sweeping scale the EEOC requests, given the individualized nature of the tax liability each employee might or might not incur.

2. *Liquidated damages*

■ The EEOC also asks for liquidated damages, which are available for a willful violation of the ADEA. 29 U.S.C. § 626(b). The EEOC argues that it was clear that the DOC's early retirement incentive program violated the ADEA and the DOC knew or should have known that. This argument ignores the equivocation in the

Attorney General's opinion, however. The Attorney General did not tell the DOC that the program definitely violated the ADEA; the Attorney General said the program might violate the ADEA. The only certainty in the Attorney General's letter is the statement that the EEOC would think that the program violated the ADEA. Simply because the EEOC believes something is illegal, however, does not make it so. The DOC could have reasonably believed that the relevant provisions did not violate the ADEA. Thus, the EEOC has not established a willful violation of the ADEA and liquidated damages are not appropriate.

### 3. *Injunctive relief*

 The EEOC asks for an injunction removing the age 55 cliff from the MLEA's CBA and removing the anti-grandfathering clause in the remaining CBAs. The DOC argues that the proposed injunction is too vague because it requires nothing more than compliance with the law.

The EEOC proposes the following injunction:

> Defendant DOC and the Rule 19(a) Defendants are **PERMANENTLY ENJOINED** from maintaining any contract provision that imposes an age limitation upon an employee's eligibility to obtain an early retirement incentive, except as otherwise allowed by the ADEA.

This is too vague and, as the DOC contends, does nothing other than require compliance with the ADEA. The DOC and the unions are obligated to comply with the ADEA with or without an injunction. In any case, however, because the Court has determined that the early retirement incentive program violates the ADEA, the provisions are illegal and cannot be enforced. Thus, the EEOC has not established that an injunction, even one more

specifically tailored than the injunction requested, is necessary.

### CONCLUSION

The early retirement incentive program in the DOC's CBAs violate the ADEA. Accordingly, **IT IS HEREBY ORDERED that:**

1. The EEOC's Motion for Summary Judgment (Docket No. 73) is **GRANTED in part** and **DENIED in part;**

2. The EEOC's requests for liquidated damages, prejudgment interest, a 15% tax multiplier, and injunctive relief are **DENIED;**

3. Claimants are entitled to damages in the amount of health and dental insurance premiums that the DOC would have paid absent the illegal early retirement incentive program from 2001 to the present. Because discovery on the damages issue is ongoing, the parties are directed to confer with Magistrate Judge Noel on a schedule for disclosure of the relevant information. After discovery is complete, the parties may file submissions stating their positions on damages, in accordance with the Court's determinations in this Order, and this Court will enter an order setting forth the final damages and entering judgment;

4. The DOC's Motion for Summary Judgment (Docket No. 84) is **DENIED;** and

5. The MLEA's Motion for Summary Judgment (Docket No. 76) is **DENIED;**